Curia, per Woodworth, J.,
(after considering the questions of fact, and remarking that they were properly found in favor of the plaintiff.) Pelletreau was properly admitted to his cross-examination, as a competent witness for the plaintiff. He was introduced and sworn generally, by the defendants; being, (as they contend,) interested to testify against them.[1] They could not. afterwards question either his competency or credibility.
*242 This view of the case, disposes of all the objections raised' by the defendants, except the single one upon the validity of the devise from Medcef Eden, the younger. He devised to Eachel Eden, one of the lessors of the plaintiff, July 3d, 1819 ; and died in that month. At the time of his devise and death,Yarick, one of the defendants, was in possession of the premises, under a conveyance in fee, claiming them adversely; having paid á large consideration, and made valuable and permanent improvements upon them.
*The facts, then, clearly present the question, whether the owner in fee can devise land which, at the time of the devise, and of his death, is in the adverse possession of another.
The devise was of the testator’s whole real and personal estate, to Eachel Eden for life, if she continued his widow, &c. The phrase is sufficiently broad to embrace all his estate, whether in possession or in action. As to the personal estate, it would no doubt carry as well choses in action as in possession. But as to land, it is denied that a right of action or entry would pass.
The question is, whether a person having a right of entry in fee simple, shall be said to have an estate of inheritance, in lands, tenements or hereditaments, in the language *243 of our statute of wills. Comparing that statute, (1 R. L. 364,) with the English statutes, (32 H. 8, c. 1, and 34 & 35 H. 8, c. 5, passed to explain the former statute,) it will be found that there is no material difference. In the former, the power to devise is given to any person having an estate of inheritance.
The statute of 34 and 35 H. 8, to remove doubts that had arisen upon the exposition of 32 H. 8, recites, that it is contained in the latter, that all and singular person and persons, having any manors, lands, tenements or hereditaments of the estate of inheritance, should have full power to will the same; and then declares, that the words “ of the estate of inheritance,” shall be expounded, “ of estates in fee simple only.” (Pow. on Dev. 218, and vid. Stat. at Large, 136, Pick, ed.) From this, it appears that these statutes are the same in substance with our statute of devises.
If the court were now called on for the first time to give a construction to our statute of wills, I apprehend it would not admit of a doubt, that under the comprehensive words used in the act, a right of entry, as well as an estate in the actual seisin and possession of the devisor, is a legitimate subject of devise; and that an estate that would descend to the heir, is transmissible equally by will. According to Sir William Blackstone, the words lands, tenements and ‘"hereditaments, include whatever may be inherited, be it corporeal or incorporeal, real, personal or mixed. (2 Bl. Com. 17.) An estate of inheritance, is one that will descend to the heir, without reference to the fact whether the ancestor has actual seisin or right of entry. In both cases, the estate descends. The ancestor is seised, although there be an adverse possession. The freehold must rest somewhere, unless it be a case where, the freehold is in abeyance. (2 Bl. Com. 107.)
Our statute of descents, (1 R. L. 52,) shows very clearly what is intended by the word seisin, as applied in that act. The third section declares, that when any person shall die seised of any lands, without devising the same, it shall descend as therein specified. If there are several persons in the direct line of lineal descent, and of equal degree of *244 consanSuin^J? ^ descends to them as tenants in common. Suppose the case of a father leaving two sons. The title is indisputable; by the reason of laches, or -other .cause, there was.an existing -adverse possession; short of the period necessary to toll the right of entry. Would the eldest son take the whole ? This would be inevitable, provided the person dying could not be considered as seised by reason of the disseisin arising from an adverse possession under a claim of title. ■ Even in England, it is conceded that the law admits a right of entry to descend to the heir; and, in this state no question has ever been raised, that both sons would equally inherit. If they could inherit, it can .only be on the ground that the father died seised. The statute does not apply or operate to change the common law of descents, but where there is a seisin of the ancestor.
Carry this doctrine farther. A judgment is obtained against A., who is the undoubted owner; but not the possessor. An adverse possession has risen against him. A. dies, and this judgment is renewed against his heirs. The direction in the writ would be, to sell the land of which A. was seised on the day of docketing the judgment. Would this title pass to the purchaser ? If not, the right of entry being in the heir only, on the principle assumed, he would *not be chargeable, at least, until he came to the actual seisin ; and if he did not prosecute until the adverse possession ripened into a right, the creditor would seem to be remediless. It can scarcely be doubted that, among the numerous sales under execution, lands of the debtor, as well those which were held adversely as others, have been sold. Was it ever objected that nothing passed by the deed in such a case? I apprehend not: and why? because the construction put on the words, “ whereof the debtor was seised,” was, that the seisin spoken of, extended to all lands to which the party had title and a right of entry.
If, then, it satisfactorily appears that such lands are included in the term dying seised, under the statute of déscents, • and the term seised under the statute relating to judgments *245 and executions, can it be denied that there is an estate of inheritance in them, under the statute of wills ?
Besides; the third section of the statute relative to descents, evidently implies that the seisin of lands, respecting which the course of descent is prescribed, might have been devised. This is certainly inferrible. The descent is predicated on the fact, that there is no devise. The words are, “ if the person shall die seised, without devising the same;" thus intimating, that the same estate which the ancestor had, and which the act professed to regulate, might be devised. If then a right of entry descends to the heirs, does it not follow that the legislature considered it might be devised ; and consequently if such an interest in lands had been devised, would not the statute of descent become a dead letter ?
It may be further remarked, in aid of this construction, that none of the evils apprehended by the common law in allowing rights of entry to be sold and transferred, are incident to a devise more than to a descent. The oppression of the weak by the rich and powerful, has no connection with the question arising on descent or devise. The law, relative to inheritance, grew out of other and distinct causes.
From this view of the question, I think no reasonable doubt can be entertained under our laws, as to what was '^intended, and what is the true construction of the statute of wills. [1]
If, however, it shall appear that, in England, a different *246 construction ^as been clearly and definitely settled, and it was so settled at the time of our revolution, so as , ’ to become a rule of property, I do not consider- myself at liberty to depart from it, however strong my conclusions may be that such construction is questionable. I have not discovered any direct adjudication upon the point in the old authorities. Yet it is admitted there are a number of cases where it is said that persons disseised cannot devise.
I have no doubt, that was the opinion entertained by the judges at an early day and for a long series of years.
Mansfield, chief justice, in Goodright v. Forester, (1 Taunt. 604,) assigns the true reason. He observes, “ the policy of the old law was the fear of oppression, arising by grants of disputable titles. Where a man had a right of entry, on which there' was doubts, or which he would not enforce himself, the law said it should not be the subject of a grant. But that does not show that it might not as well be devised as to descend; for the same reason of inconvenience does not apply.” This cause of Goodnight v. Forester, was first decided in the king’s bench, (8 East, 552;) where it was held that a right of entry was not devisable. Lord Ellenborough, in giving the opinion of the court, seems to place stress upon Corbets case, (1 Co. 85,) and Butler & Barber's case, (3 Co. 82.) In the first case, it was said by the court, “for the construction of wills, this rule was taken by the justices in their arguments ; that such an estate, which cannot by the rules of the common law be conveyed by act executed in his life, by advice of counsel learned in the law, such estate cannot be devised by the will of a man, who is intended by law to be inops consilii.” It is to be observed that this was laid down as a general rule. The question whether a right of entry was devisable, was not before the court. The same- may be said of Butler & Barber's case. The question of a right of entry was not before the court. There are other cases where a different language seems to *be held. In Roe v. Griffiths, (1 Bl. Rep. 606,) descendible and devisable are said to be convertible terms. The case of Jones v. Roe, (3 T. R. *247 88.) goes far to show the opinion of the judges who then presided. The question was, whether a possibility coupled with an interest was devisable. The counsel argued that the statute of wills put conveyances or grants by the parties in their lifetime, and wills, on the same footing; that what is not assignable, is not devisable. The counsel on the other side were stopped by the court. Lord Kenyon observes, “ the statute enables persons having any manors, lands, &c., to devise; which must mean having an interest in the lands.” Ashurst, justice, says, it is strange that the courts in former times should have been governed by such narrow reasoning, when they were construing this act of parliament. For the plain meaning of the statute is, that every person who has a valuable interest in lands, should have the power of disposing of it by will. Buller, justice, says, “ If it be such an interest as is descendible, it seems strange to say that it is not also devisable. They must both be governed by the same principle. If the ancestor has an interest, he has a right to dispose of it by will.
The case of Goodright v. Forester was brought into the exchequer chamber, and there affirmed; (1 Taunt. 578;) but not on the ground that a right of entry was not devisable. That decision was left untouched. The court decided on a different point. Mansfield, O. J., gave the opinion of the court. He was evidently dissatisfied with the decision of the court below. He observed, “ It would be a singular construction at this day, to say, that upon the words .of the statute, which enacts that persons having lands, tenements and hereditaments, may devise them; he who hath a reversion in fee, the highest estate in lands, to be perfected merely by entry, cannot devise them.” (Id. 604.) Again: “ If the doctrine of estates arising by disseisin, is such as has been stated by the defendant’s counsel, we must lament that the law is such. Our ancestors got into very odd notions on these subjects; and were ^induced by particular causes to make estates grow out of wrongful acts.” (Ibid. 613.)
This question, I think, was never expressly decided in England, as the point before the court, until the case of *248 Goodright v. Forester; although the doctrine seems to have pgen recognized as the construction of the statute on various occasions. It is equally certain that other judges have considered an interest in lands would exist, although the party had a right of entry only; and that it was devisable. The unequivocal language of the court in Jones v. JRoe, coupled with the strong repugnance of C. J. Mansfield, go far to show that such was not their construction of the statute; and that they did not think the adjudications upon the statute had been such as not to leave the question open. It seems to me, therefore, we are at liberty to construe the statute as Lord Ellenborough, in Goodright v. Forester, would manifestly have approved, had he not considered himself bound by former adjudications. Some of his learned predecessors had different views, which I think are rather to be followed. It is certain that in our courts there has been no decision on the point. Eemarks have been thrown out in accordance with the law, as laid down in Goodright v. Forester, but I apprehend nothing more. This question was presented in Smith v. Van Dursen, (15 John. 345.) All that is said on the subject is, that the actual possession at the time of devising, though it invalidates the devise, does not prevent the descent. The question does not appear to have been raised by the counsel, as to a devise of a right of entry. It was not necessary for the court to have adverted to it at all; as the same persons were both heirs and devisees. In Jackson v. Rogers, (1 John Cas. 33,) it was contended that there was a disseisin which destroys the capacity to devise. The court were of opinion that there had been no disseisin or incapacity to devise. The point was passed over without further remark. On the whole, I am of opinion that the motion for a new trial be denied.
Hew trial denied. [1]

 Where a party produces and swears a witness, though tie be interested to testify against the party calling him, the other may cross-examine him as to all matters pertinent to the issue; and the party calling him cam 4 con *242 fine the eross-examination to matters in which the witness has no interest. Webster v. Lee, 5 Mass. Rep. 334; Merrill v. Berkshire, 11 Pickering, 269.
Where the plaintiff called a witness (as he stated) to prove the signatures of the parties to a bill of exchange, and a promissory note, and for that onl^ and .the witness was directly interested in favor of the defendant; it was held, that the plaintiff could not afterwards object to the competency of the witness, and that the defendant had a right not only to cross-examine him as to the particular fact which he was called to prove, but to examine him in relation to any matter embraced in the issue. Fulton Bank v. Stafford, 2 Wend. Rep. 483. And see Winston v. Mosely, 2 Stewart’s Rep. 137, 139. But in Shield’s Lessee v. Miller, 4 Har. & John. Rep. 1, 6, 9, a plaintiff was allowed to call a witness, and examine him to one fact, and then to exclude him as interested for the defendant to prove another and a distinct fact. Helm v. Handley, 1 Litt. Rep. contra.
A witness offered and sworn by a party, cannot be withdrawn by him on the ground of interest; but he must allow the opposite party to cross-examine. Bogert v. Bogert, 2 Edw. Ch. Rep. 399, 403.
See Cowen & Hill’s Notes to Phillips, Ev. Pt. 2. pp. 718, 719.

 Contingent interests, both in real and personal estate, are transmissible like vested interests. Winslow v. Goodwin, 7 Met. Rep. 363.
A possibility, conpled with an interest, is devisable, where the person in whom the interest is to vest, in the event contemplated, is known or is capable of being ascertained. As to such interests, devisable and descendible, are convertible terms; and no particular form of words is necessary in a will to embrace contingent interests in real estate. Pond and others v. Bergh and others, 10 Paige, 140. [Vid 3 Term. Rep. 88; 1 Rob. on Wills, 212; 4 Kent. Com. 510.]
Under the New York revised statutes, every estate or interest of the testator, which is descendible to his heirs, may be devised by his will. Ib. 3 Am. Ch. Dig. p. 549, tit. Wills.

 This ease was subsequently affirmed in the Court of Errors, Varick v. Jackson, ex dem. Eden, 2 Wendell’s Rep. 166. See the opinion of the Chancellor in this ease, in the Court of Errors, 2 Wend. 200.