Bartley, C. J.
The original suit was an appeal from the judgment of a justice of the peace to the court of common pleas of Franklin county, wherein the plaintiff below, Samuel Drake, declared against the defendant, James Legg, in case, for a false warranty and deceit in the trade of a horse. It appears that on the trial of the cause at the September term of the common pleas for 1850, on an issue to a jury, on the defendant’s plea of not guilty, the plaintiff, after offering evidence tending to prove that he and the defendant, on the 4th day of July, 1849, had traded horses, and that also on the said day, prior to the trade, the parties had held a conversation on the subject of trading horses, at the blacksmith shop of one James Ferguson, called the defendant, James Legg, as a witness, by whom the plaintiff proved the time when and place where the trade took place, the identity of the horses traded, and that the horse traded by the defendant was the same horse that he had talked of trading at the blacksmith shop. On cross-examination, the defendant’s counsel asked the witness to state the terms of the trade, also the conversation at the blacksmith shop before mentioned, to which the plaintiff objected, and the court sustained the objection; to which ruling by themourt the defendant excepted.
It further appears that, in the argument of the cause before the court and jury, the defendant’s counsel offered to read certain passages from Youatt’s work on Veterinary Surgery, the defendant having proven by a witness that the work was a reputable and standard authority on that subject; but not having either exhibited to the witness the particular book *from which he proposed to read, or offered the same in evidence in the cause. The plaintiff objected, and the court sustained the objection, and refused’to allow the defendant to read from the book in argument; to which ruling,, also, the defendant excepted.
*248 Yarious other exceptions to the decisions of the court were taken on the trial of the cause; on which, together with the exceptions above mentioned, error is assigned; but it is not deemed necessary to notice any more of them hero.
The trial in the court of common pleas resulted in a judgment for the plaintiff below for sixty dollars and costs, which judgment was on writ of error in the district court of said county of Franklin, at the June term thereof, 1852, affirmed. And the present writ of error is prosecuted in this court to reverse the judgment as affirmed in the district court.
The question presented by the last-mentioned exception, is not whether standard boobs on matters of science and art, when pertinent, can be proven and given in evidence on the trial of the cause; but whether counsel, in their address to the jury, have a right, by way of argument or illustration, to read extracts from works on ■science not given in evidence. While the right of a party to be heard by his counsel on the trial of his cause is not to be questioned, and is often of great service in the investigation of questions, both of law and of fact; yet, inasmuch as this privilege may be liable to abuse, to the great hindrance and annoyance of courts in the progress of business, the extent and manner of its exercise must in some measure rest in the sound discretion of the court. Although unlimited license in range and extent is not allowed to counsel, in their addresses to the court and jury, yet no pertinent and legitimate process of argumentation within the appropriate time allowed should be restricted or prohibited. And it is not to be denied but that a pertinent quotation or extract from a work on science or art, as well as from a classical, historical, or other publication, may, by way of argument or illustration, be not only admissible, but sometimes highly proper. And it would seem to make no difference whether it was repeated by counsel from recollection or *read from a book. It would be an abuse of this privilege, however, to make it the pretence of getting improper matter before the jury as ■evidence i,n the cause.
In the case of Rex v. Courvoisier, 9 C. & P. 362, it was adjudged that council had a right to read to the jury the general observations of a learned judge, made in a case tried some years before, on the nature and effect of circumstantial evidence, if he adopted them as his own opinions, and made them part of his address to the jury.
But in the case before us the bill of exceptions does not show *249 4hat the passage of Youatt’s work on veterinary surgery, which the counsel proposed to read, had any relevancy to the cause on ■trial, or carne within the appropriate and legitimate scope of argument. It is not, therefore, made to appear sufficiently that any right of the party was interfered with, to his injury in this respect; and a judgment will not be reversed on writ of error for the action of the court below, in regard to a matter resting within its discretion.
The error assigned on the other ground of exception to the ruling of the common pleas above mentioned, involves an inquiry as to the extent to which the cross-examination of a party to a suit •may be carried when made a witness on the trial bjr the adverse party. The act of March, 1850, to improve the law of evidence, authorizes the examination of any party to an action at law, as a witness by the adverse party, “ in the same manner, and subject to the same rules of examination, as other witnesses are compelled to testify.” When, therefore, a party in any action avails himself of this provision of the law, and makes his adversary a witness in the cause, he thereby waives the objection to his competency, and places him on the same ground with any other witness in the case, both as to •competency and as to credibility. So that, when a party to the suit is thus made awitness,hcbecomes competent for all purposes, andmay be subjected to cross-examination as any other witness, with a single qualification that a cross-examination on behalf of the party himself called as a witness, with a view to his own impeachment, would be ^incompatible with his situation as both party and witness; for the reason that he could not allege his own want of credibility.
What, then, is the legitimate extent of the right to cross-examine .a witness ? It has been held in England, that when a competent witness has been called and sworn on one side, the other party will in strictness bo entitled to cross-examine, although the party calling him has not examined him in chief at all. 2 Phillips’ Ev. 397.
A different practice, however, has been adopted in this country. Ellmaker v. Buckley, 16 Serg. & R. 72. But when a witness has been examined by one party, whether the right of the other party to cross-examine him is limited to the matters upon which he has already been examined in chief, or extends to the whole ease, does mot appear to be settled by a perfect concurrence of authority.
The case of the Philadelphia and Trenton R. R. Co. v. Stimpson, 14 Pet. 448, has been understood as limiting the cross-examination *250 of a witness to the facts and circumstances connected with the matter stated in the direct examination.. The question, however, was-not distinctly presented in that case, and the rule on the subject was-only noticed by the court incidentally.
But in the ease of Webster v. Lee, 5 Mass. 334, it is distinctly settled, that where a witness is produced and examined by a party in-an action, even though he be interested to testify against the party calling him, the other party may cross-examine him as to all matters pertinent to the issue on the trial, although the witness could not have been called and examined at his own instance in the first place. And in the case of Merrill et al. v. Berkshire, 11 Pick. 269, it was adjudged that a party calling upon a witness interested against, him, could not confine the cross-examination to matters in which the-witness had no interest. Thus it was ruled in the case of Eden v. Varick, 7 Cow. 238, that where a witness directly interested in favor of the plaintiff in a cause is called and examined by the defendant to prove a particular fact, such as the execution of a bond, the plaintiff *has a right to cross-examine him generally as to the merits of the cause. This decision was subsequently affirmed in the court of errors. 2 Wend. 166. And the case of Fulton Bank v. Stafford, 2 Wend. 483, is to the same effect on this point. In the-case of Morgan v. Bridges, 2 Stark. 279, it was held that where a-party is under the necessity of calling his real adversary to the suit (although n ot a party to the record) for the purpose of formal proof only, he makes him a witness for all purposes, and subject to a crossexaminatiomas to the whole case.
The weight of these authorities is not weakened by the case of Ellmaker v. Buckley, 16 Serg. & R. 72, or Floyd v. Bovard, 6 Watts & S. 75. In the former case, the question was whether a defendant could open his case and introduce the matter of his defense in the cross-examination of plaintiff’s witnesses; and in the latter, the-question was as to the competency of the witness and the competency of the substance of testimony erroneously rejected.
The term cross-examination would not, perhaps, strictly import any thing more than a leading and searching inquiry of the witness-for further disclosures touching the particular matters detailed -by him in his examination in chief. This, however, is said to be one of the principal and most efficacious tests which the law has devised for the discovery of truth. And inasmuch as it has for its object the disclosure of not merely the extent and degree of accuracy of *251 the witness’ knowledge, as well as the means of his knowledge, but also his motives, inclinations, powers of memory, and relative situation in respect to the parties, and the subject-matter of the investigation, it becomes an important test of the credibility of the witness. To limit the cross-examination, therefore, exclusively to the particular facts called out in the direct examination, would often defeat one of its most useful and important objects.
It has been said, it is true, that although the cross-examination generally admits of leading questions, yet if the cross-examination has respect to, and is in reference to new matter *or topics disconnected with the subject-matter of the direct examination, leading questions can not be asked. Harrison v. Rowan, 3 Wash. C. C. 584. This, however, must rest on the discretion of the court. In the case of Moody v. Rowel, 17 Pick. 490, it was held that, upon the cross-examination of a witness, the court may, in its discretion, permit leading questions to be put, although relating to matters not inquired of upon the direct examination.
The rule, however, that the cross-examination may be extended generally to the merits of the cause, or to any matter embraced in the issue, is limited by the application of another rule, which often becomes important in the trial of a cause, and that is that a party can not, before the time of opening his own case, introduce it to the court or jury by the cross-examination of the witnesses of his adversary. Ellmaker v. Buckley, 16 Serg. & R. 72. The order in which each party may introduce his evidence on the trial of a cause, must, to a great extent, rest in the discretion of the court. But a defendant has no right to go into the distinct matter of his defense, by way of avoidance, before the plaintiff has rested. And to allow a party defendant to do so in the cross-examination of the plaintiff’s witnesses, would be giving him an undue advantage.
It would appear that the fair conclusion, from all the authorities, is, that the right of cross-examination is not to be limited by the particular facts disclosed in the examination in chief, but may be extended to whatever the party calling, the witness is required to establish to make out and sustain his cause of action or his defense. Thus a witness of the plaintiff may be cross-examined by the defendant touching all matters which it is competent for tbe plaintiff to prove under the issue, in order to entitle him to recover. And, on the other hand, the plaintiff may cross-examine the defendant’s *252 •witnesses to all matters which the defendant may prove under the issue, in order to sustain his defense.
In the case before us, the witness, after having testified as to the time when andthq place where the contract was made, and the identity of the horses tra'ded, was, on cross-examination, tasked to state the terms of the contract, etc., a matter connected somewhat with the subject of the direct examination. It would be toe stringent a practice to thus curtail the right of cross-examination, and would lessen the efficiency of this important test of truth.
The court of common pleas clearly erred in sustaining the objection to the cross-examination; and for this cause the judgment of affirmance in the district court is set set aside, and the judgment of the court of common pleas reversed, and the case remanded for further proceedings.

Judgment reversed.