## KELLY *vs.* BROOKS.

1. In an action by an auctioneer against the purchaser of a slave, to recover the difference between the price bid at the sale and the amount brought at a resale on the purchaser's account, a written memorandum of the sale, kept by plaintiff's clerk who was present,—accompanied by the parol testimony of the clerk, showing that the slave was knocked down to defendant, and was afterwards delivered to him,—is admissible evidence for plaintiff, as proving such a consummation of the sale as will take it out of the statute of frauds.

2. Evidence of a proposition of compromise or arbitration, and its refusal, is not admissible evidence against the party refusing.

3. If a party introduces and examines in chief a witness who has an interest adverse to him, he thereby waives all objection to his incompetency from interest, and confers on his adversary the right to examine the witness fully as to his knowledge touching any and all facts material to the case.

4. If the purchaser of a slave at public auction takes possession under his contract, without anything being said, or any understanding had, qualifying the act, and retains possession for one, two or three days, without making any objection to the sale, the jury may well infer from these facts a consummation of the contract which is sufficient to take it out of the statute of frauds.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS action was commenced by summons and complaint, and was brought by Augustus Brooks " to recover as auctioneer $200, being the difference between the price at which a negro was bid off by defendant, and the price brought at a resale made on defendant's account." The defendant pleaded, 1st, that he never purchased from plaintiff the said negro alleged in his complaint ; 2d, that the slave which plaintiff

offered to sell him was represented by plaintiff to be sound, but defendant, ascertaining that the slave was unsound, immediately refused to receive him, and plaintiff thereupon took him and used him as his own property ; 3d, that the supposed contract for the purchase of said slave was for a sum exceeding $200,—that there was no note or memorandum in writing of said contract, signed by defendant, expressing the consideration of the contract, and that he never accepted the slave under the contract; and, 4th, that plaintiff, at the time of his alleged sale, had no title to said slave, nor any lawful authority to sell from any one having a title. The plaintiff took issue on the first, second, and third pleas ; and replied to the fourth, that he sold the said slave as auctioneer, at public auction, and had full authority to sell.

It was shown, on the trial, that the slave, at the sale, was warranted sound and healthy, and the title also was warranted. The plaintiff offered in evidence the testimony of one C. Heart, accompanied by a memorandum in pencil made by him, as plaintiff's clerk, at the time of the sale, on plaintiff's sales book ; which memorandum was as follows : " Aug. 12, 1853. Dick, Dr. Kelly—$725." Witness also testified, that he was present when the defendant bid off the slave ; that the price was $725 ; that, after the slave was struck off, defendant took him from the court-house, where he was sold, and the slave was not returned to the court-house until the next day, or the next day but one, when witness understood that defendant refused to keep him, for the reason, as defendant alleged, that he was unsound. This memorandum, and the testimony of the witness, were objected to by the defendant, because it proved a contract within the statute of frauds ; but his objection was overruled, and the testimony permitted to go to the jury, and defendant excepted."

It was proved by other witnesses that the slave was taken away by the defendant immediately after the sale, and was not returned until the next day, or two or three days thereafter—the witnesses could not remember which. The defendant also proved by Dr. Hamilton, a physician, that he had been called by defendant to examine the slave, as to his soundness, on the day of the sale, or the next day thereafter ; and that after the examination, defendant said he would not keep the

slave. The plaintiff offered in evidence a note, written by himself to defendant a few days after the sale, offering to submit the question as to the soundness of a slave to two physicians, with leave, if they disagreed, to choose an umpire, and that defendant refused to accede to the proposal. To the introduction of this evidence the defendant objected, but his objection was overruled, and the evidence allowed to go to the jury ; to which ruling of the court defendant excepted.

The defendant introduced C. L. LeBaron as a witness, who testified, that the said slave was his property when sold by defendant ; that he placed him in the hands of plaintiff to be sold on his account, and that this suit was brought for his benefit ; " and here defendant closed his examination of the witness. The plaintiff then proposed to prove by said Le-Baron, that said slave was sound at the time of the sale ; to which defendant objected, 1st, because said witness had not been interrogated as to the soundness of the slave on his direct examination ; and, 2d, because said witness was the warrantor and party interested ; which objections were overruled, and the witness was allowed to testify as to the soundness of the slave."

" The court charged the jury, among other things, that, before plaintiff can recover, they must be satisfied that there was an acceptance and receiving of the slave by the defendant after the bid, and that the slave was sound and healthy, and the title good ; that the memorandum made by Heart was not a sufficient memorandum to bind the defendant—that is, it was not a sufficient compliance with the provisions of the statute of frauds, requiring the contract, or some note or memorandum thereof, to be made in writing ; that if they find the title was good, and the slave sound and healthy, they must be satisfied, before they can find for the plaintiff, that the defendant accepted and received the slave after the bid ; that if, at the time the defendant took the slave after the bid, or the owner, or the auctioneer, or his clerk, authorized him to take him and examine him, or there was any understanding between them that he could take him and examine him,—such taking would not be an acceptance or receiving as required by the statute of frauds, and they should find for defendant ; but, if they should find that defendant took away the slave

after he was struck off to him, without anything being said, or any understanding had, between the parties, to qualify the act,—the taking of the slave away, and keeping him for one, two, or three days, before he made any objection to the sale, would be sufficient for them to presume an acceptance and receiving within the statute of frauds ; to which charge, as to acceptance and receiving, defendant excepted, and also to the said several rulings of the court."

The errors assigned are, 1st, the admission of the evidence in relation to the proposition of compromise and its refusal ; 2d, in allowing LeBaron to be examined by plaintiff below against defendant's objection ; and, 3d, the charge of the court as to what constituted a presumption of acceptance and receiving on the part of defendant.

C. P. ROBINSON, for the appellant :

1. The court erred, in admitting evidence of the offer of compromise, and of its refusal : it was irrelevant, illegal, and calculated to mislead the jury, and should have been excluded. Mayor, &c., of Columbus v. Howard, 6 Geo. R. 213 ; 12 Ala. 823 ; 8 Port. 176 ; 11 Mass. 140.

2. The court erred, also, in permitting LeBaron to testify as to the soundness of the slave. He was examined by the defendant, only so far as to disclose his entire and complete interest in the suit.—Philadelphia & Trenton R. R. Co. v. Stimpson, 14 Peters 448, 461 ; Floyd v. Bovard, 6 W. & S. 75 ; 1 Green. Ev., p. 457.

3. The court erred, also, in its charge to the jury, " that the taking of the slave away, without anything being said or done to qualify the act, and keeping him one, two, or three days, would be sufficient for them to presume an acceptance and receiving." This is no necessary presumption : its force should have been left to the jury. Besides ; how is the bare keeping of the slave for one day so inconsistent with his being so kept only to test his soundness, as of itself to repel this presumption, or any other equally consistent with the act? wherein does it demonstrate an acceptance?

E. S. DARGAN, *contra.* (No brief on file.)

CHILTON, C. J.—1. The proof made by the witness Heart, that as clerk for the auctioneer, Brooks, he kept a memorandum, which he produced, showing the day of sale, and the price at which the slave Dick was sold, and that he was taken away by Kelly, the purchaser, and not returned until the next day or day after that, was clearly admissible, as tending not only to prove the sale, but a consummation of it by the delivery of the property to the purchaser. The legality of this proof, though presented by the bill of exceptions, was not controverted in the argument; so we dismiss it, and turn to the next subject of inquiry, namely :

2. Whether the proof made of the proposal of the plaintiff to the defendant, that each should call a physician, and the two physicians should select a third, to determine as to the soundness of the slave, and the refusal of the defendant to accede to this proposal, was legal. We are unable to perceive what legitimate effect this proof could have upon the issues before the jury. On the other hand, it may be readily seen how it might have been turned in the argument to the disadvantage of the defendant, who had a perfect right to reject a proposal for a compromise and plant himself upon his supposed legal rights, if he chose to do so. Such proof would open a door to artifice in the manufacture of such documents for the purpose of making them evidence, and might be well calculated to mislead a jury, and should not be allowed.

3. The defendant, having examined LeBaron as a witness, and proved by him that the slave was sold on his account by Brooks, and not on account of Brooks, who brought this suit for said witness''benefit, objected to the plaintiff's proceeding, upon cross examination of the same witness, to prove the soundness of the slave. Whatever may have been the rule formerly, it is now well settled, that where a party introduces and examines a witness in chief, who has an interest adverse to him, he thereby gives the witness credit, waives his objection to his interest, and thus confers the right on his antagonist to examine him fully as to his knowledge of any and all facts material in the case.

4. We are unable to perceive any error in the charges of the court. They were fully as favorable for the defendant as

the law would warrant, and, taken together, presented the case in a very clear and proper light before the jury. It is too clear, we think, to admit of doubt, that if the defendant bid off the slave, and after purchasing, took the actual possession of him, and retained him for one, two, or three days, before he made any objection to the sale, and the acceptance of him was without anything being said, or any understanding had between the parties, qualifying the act, the jury might well infer from this a consummation of the contract, so as to take the sale without the statute of frauds as enacted by the Code.

For the error in admitting the proof of the proposal to call in the aid of physicians, the judgment must be reversed, and the cause remanded.