CASE No. 1161.

KIBLER v. McILWAIN.

1. After the sale of a tract of land under the order of the Court of Equity for the foreclosure of a mortgage, the mortgagor was adjudged a bankrupt, and subsequently the sale was confirmed, the assignee in bankruptcy taking no action in the case. *Held,* that the jurisdiction of the State court was not affected by the adjudication of bankruptcy; and that the order of confirmation concluded the assignee as to all matters stated in the report on sales and confirmed by the court, without exception, unless fraud was involved in the proceedings.

2. When facts constituting a fraud become known, actually and constructively, to the party injuriously affected, the Statute of Limitations then begins to run against the right to have the fraud adjudicated.

3. A finding of fact by the Circuit judge in an equity cause from evidence taken before him, overruled, because clearly inconsistent with the undisputed testimony of the case.

4. A mortgagor knew in 1867 that at a sale of his property under a decree of foreclosure, a part thereof was reserved for his homestead in obedience to a

military order, but the report on sales made and confirmed in 1868, and the deed then executed and recorded, covered the entire tract, and these matters were asserted by the mortgagor as a defense to an action brought against him by the purchaser in 1869, for the recovery of this homestead. *Held,* that a petition filed in 1878 in the original foreclosure suit for leave to have the sale vacated for fraud, was barred by the Statute of Limitations.

5. Nor would the currency of the statute be arrested by action instituted in 1872 to set aside the sale for fraud, and dismissed in 1878 because that an original action for such purpose was improper.

6. In the cross-examination of a witness in this State, counsel may ask him questions bearing upon the whole case, so as to bring out matters of independent defense, and are not confined to the matters testified to in the examination in chief.

Before Mackey, J., Lancaster, February, 1880.

The case is sufficiently stated in the opinion.

*Messrs. Patterson & Gaston,* for appellants.

*Mr. Ira B. Jones* read argument of *W. L. DePass,* deceased, contra.

March 8th, 1882. The opinion of the court was delivered by

McIver, A. J. On May 10th, 1867, the plaintiff filed a bill against the defendant, McIlwain, for a foreclosure of a mortgage on real estate. To this bill, amongst other defenses, McIlwain set up a claim of homestead, which was disallowed, and a judgment of foreclosure was rendered, directing a sale of the whole of the land mortgaged. Under this judgment the whole of the land was advertised for sale on December 2d, 1867, and on that day a sale was made, but exactly what was sold, whether all of the land subject to the defendant's claim of homestead under military orders No. 10, issuing from the headquarters of the department then embracing this State, or whether the homestead was reserved, was the subject of much conflict of testimony. The commissioner in equity, however, who was directed to make the sale, executed a deed on the day of sale to the plaintiff, Kibler, who was the highest and last bidder at the sale, for the

whole of the land, and this deed was duly recorded on May 29th, 1868.

On June 19th, 1868, the commissioner in equity made his report of the sale to the court, in which he stated that, in conformity with the order of sale, " he exposed for sale the lands described in the pleadings " on the terms prescribed ; that Kibler bid off the same, and having complied with the terms of sale, he, as commissioner, had executed a deed to said Kibler " for the lands described in the pleadings." To this report no exceptions appear to have been taken, and accordingly, on June 22d, 1868, the court made an order confirming the report of the sale, " and making it the decree of the court." It appears, however, that in the meantime, to wit: on May 7th, 1868, McIlwain had been adjudged a bankrupt by the District Court of the United States, and that on August 22d, 1868, D. A. Williams became his assignee.

On January 18th, 1869, Kibler commenced an action against one Bridges, who had become the tenant of the assignee Williams, to recover possession of the dwelling house, situate on the land covered by his deed from the commissioner in equity, and about twenty acres adjoining, which was claimed as McIlwain's homestead. The defense to this action rested upon the allegation that under the military orders aforesaid, McIlwain was entitled to a homestead, and that the same was reserved and not sold by the commissioner in equity. The defendant in that . action having obtained a judgment in his favor, from which there was an appeal, the Supreme Court ordered a new trial upon the ground that the military orders could confer no right of homestead as against a mortgage. Upon a second trial the defendant again had a judgment, and the Supreme Court again ordered a new trial upon the same ground. (See the case as reported in 3 *S. C.* 44, and again in 5 *S. C.* 335.) That case is understood to be still pending in the Circuit Court for Lancaster county.

It appears also that D. A. Williams, as assignee of McIlwain, commenced an action on November 14th, 1872, against Kibler to set aside the sale of the land by the commissioner, substantially upon the ground of fraud. This case was heard in May, 1875,

by the Court of Common Pleas for Lancaster county, and a judgment rendered setting aside said sale. From this judgment Kibler appealed, and the same was reversed by the Supreme Court in March, 1878, (10 *S. C.* 414,) upon the ground : "That if the sale was improperly reported and confirmed, the plaintiff (in that action), as the assignee of McIlwain, bound by the order of confirmation, should have intervened in the foreclosure suit and sought to set that order aside ;" it being made to appear to the court that the foreclosure suit was then pending.

On June 19th, 1878, D. A. Williams "resigned his position as assignee of J. D. McIlwain," and the defendant, J. W. De-Pass, was appointed in his place. On June 24th, 1878, DePass, as assignee, filed his petition asking that the original foreclosure suit, which had been dropped from the docket, be redocketed, that he, as assignee, might be allowed to intervene, and praying, in substance, that the sale made by the commissioner in equity, together with his deed to Kibler, might be set aside upon the ground of fraud. To this petition the plaintiff herein filed an answer, in which, amongst other things, he relied upon the Statute of Limitations. The Circuit judge overruled the plea of the Statute of Limitations and rendered judgment in accordance with the prayer of the petition, and from this judgment the plaintiff appeals on numerous grounds.

We do not deem it necessary to consider separately the several grounds of appeal as they are set out in the "case," but will simply consider such questions as are, in our judgment, conclusive of the case.

There can be no doubt that when the original action for foreclosure was commenced the Court of Common Pleas had full jurisdiction of the subject-matter and of the parties, and the fact that, pending the action, McIlwain was adjudged a bankrupt could not divest such jurisdiction. Hence, the judgment of foreclosure and sale and all subsequent proceedings therein had the same force and effect as if there had been no adjudication of bankruptcy. It is true the assignee might have come in and defended the action, or upon a proper showing might have had any orders improperly granted set aside, but until he did so he was as much bound by the proceedings as the bankrupt would

have been if there had been no adjudication of bankruptcy. *Eyster* v. *Gaff*, 91 *U. S.* 521 ; *Daniels* v. *Moses*, 12 *S. C.* 138.

This being the case the question of fact, as to whether the whole or only a portion of the land was sold by the commissioner in equity, cannot arise now, for it has been adjudged and conclusively settled as to both McIlwain and his assignee, unless such adjudication is assailed upon the ground of fraud. The order required a sale of the whole of the land, and it was so advertised. When, therefore, the commissioner reported that he had sold all the land described in the pleadings ; that the purchaser had complied with the terms of sale, and that he had executed a deed for the same, and this report was not excepted to, but, on the contrary, was confirmed and made the decree of the court, the matter was *res adjudicata* both as to McIlwain and his assignee.

This, however, would not preclude either McIlwain or his assignee from assailing the proceedings upon the ground of fraud, and it therefore becomes necessary for us to consider the case in that aspect. But as we are satisfied that this proceeding on the part of DePass, as assignee, is barred by the Statute of Limitations, it will be unnecessary for us to consider the evidence relied upon as establishing the charge of fraud.

There can be no doubt that a proceeding to set aside a deed or judgment upon the ground of fraud, where the party seeking so to do is in a condition to institute an action for that purpose, must be commenced within four or six years, according as the right of action accrued before or after the adoption of the Code of Procedure, from the time when the facts constituting the fraud are discovered by the aggrieved party. The inquiry then is whether this proceeding was commenced within the time allowed. Although the Circuit judge has found as matter of fact that neither McIlwain nor his assignee had any knowledge of the alleged fraud until some time during the month of July, 1872, we are utterly at a loss to conceive how such a finding can be supported in the face of the undisputed facts appearing in the record.

The alleged fraud consisted in what occurred at the sale, what was stated (untruthfully, as defendants assert,) in the report of the sale and in the confirmation thereof, and all these facts were

certainly known to McIlwain at the time, or he had such knowledge as would, by the exercise of the most ordinary diligence, have led to the full discovery of them. He was undoubtedly present at the sale and knew what occurred there. He was a party to the foreclosure suit and knew, or ought to have known, what was done therein. Indeed it would be a great tax upon the credulity of the most credulous person to suppose him ignorant of what disposition was made of his claim to have the homestead reserved from the sale of the balance of the land. The deed conveying the whole of the land, without any reservation of the homestead, was spread upon the records as far back as May 29th, 1868. Kibler commenced an action to recover possession of the very land now in controversy on January 18th, 1869, to which the defense was the very same facts now relied upon to set aside the sale.

In view of all these undisputed facts it is impossible to doubt that McIlwain knew then all that he knew when the present proceeding was commenced, and the statute having commenced to run against him would continue to run against his assignee. But, in addition to this, the first assignee, Williams, in his testimony, admits that, as early as January, 1869, he knew the facts which are now alleged to constitute the fraud, and he must be regarded as having notice of the deed and the terms of it from the time when it was put upon record, and he, therefore, would have been barred in January, 1873, and, of course, his successor, the present assignee, is in no better condition, in this respect, than his predecessor.

We are unable to see how the abortive proceeding instituted by Williams, as assignee, in November, 1872, could affect the currency of the statute. That action was dismissed, and is not and cannot be in any way connected with the present proceeding. It has been adjudged to have been erroneously brought, and can have no effect upon the operation of the statute. It is clear, therefore, that this proceeding comes too late, and that the Circuit judge erred in not sustaining the plaintiff's plea of the Statute of Limitations.

Although this is conclusive of the case, yet there is one question raised by the exceptions which, from its general importance,

had better be determined with a view to settle the practice as to the mode of conducting the cross-examination of a witness, about which, it is said, some difference of opinion exists. That question is whether a party has a right to interrogate a witness, on his cross-examination, as to facts not alluded to in the examination in chief. In this case the Circuit judge followed the rule which Greenleaf (Vol. 1, § 445,) says has been established by the Supreme Court of the United States whereby " a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination, and that if he wishes to examine him as to other matters he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause."

This question, strange to say, does not seem to have been distinctly decided in this State, though in the case of *Clinton* v. *McKenzie*, 5 *Strobh.* 41, it seems to be assumed that the rule is different here from that estalished by the Supreme Court of the United States, and that here a witness may, on his cross-examination, be interrogated as to any fact pertinent to the case, " whether the examination be directed to qualify, neutralize or discredit the testimony which the witness may have given on his examination in chief, or to lay the foundation of his defense in any new matter in the knowledge of the witness ;" and this, so far as we have been able to learn, is the rule which has very generally prevailed in this State. It is conceded by Greenleaf, in the section above cited, that this is the rule in England, and there counsel, in the cross-examination of a witness, are permitted to ask questions bearing upon the whole case, so as to bring out matters of independent defense, and are not confined to the matters testified to in the examination in chief. 1 *Whart. Ev.* § 529 ; *Morgan* v. *Brydges*, 2 *Stark.* 314 (3 *Eng. Com. L.* 361). In Massachusetts the English rule seems to have been adopted. *Moody* v. *Rowell*, 17 *Pick.* 499 ; *Commonwealth* v. *Morgan*, 107 *Mass.* 205. So, also, in Alabama. *Kelly* v. *Brook*, 25 *Ala.* 523, and *Fralick* v. *Presley*, 29 *Ala.* 461. In New York, *Jackson* v. *Varick*, 7 *Cow.* 238, and in Missouri, *State* v. *Sayers*, 58 *Mo.* 585.

We think, also, that this rule has the support of reason as well

as of authority.  The oath administered to a witness requires him to speak the truth, *the whole truth,* and nothing but the truth, and, therefore, when a witness is put upon the stand he ought to be allowed an opportunity for stating *all* the facts within his knowledge bearing upon the issues involved in the case, and should not be confined to those facts only about which the party who offers him as a witness chooses to interrogate him.  It is very true that the other party may put him on the stand as his witness and examine him as to any facts within his knowledge which he may desire to bring before the Court, but he is not obliged to do so; and it may and often does happen that the other party would prefer to forego the opportunity of bringing out such facts rather than adopt one of his adversary's witnesses as his own.  In such case the result would be that the witness would have no opportunity of telling *the whole truth,* as he has been sworn to do.  We think, therefore, that the English rule, founded as it is in reason, and fully sustained by authority, is the better rule and should be followed.  Hence, the Circuit judge erred in refusing to allow counsel for the plaintiff to cross-examine the witness Clyburn except as to such matters as had been brought out on the direct examination.

The judgment of this court is that the judgment of the Circuit Court be reversed and that the petition filed by the defendant DePass be dismissed.

SIMPSON, C. J., and McGOWAN, A. J., concurred.