Manson-Jacobs Co., Inc., Respondent, *v.* West 129th Street Building Corporation, Appellant.

First Department, November 27, 1925.

**Brokers — action by real estate broker to recover commissions for procuring person ready, willing and able to make lease — verdict for plaintiff against weight of evidence — evidence — reversible error to admit on plaintiff's behalf unsworn written statement by plaintiff's witness, proposed lessee, contradicting witness' testimony — fact that witness was admittedly hostile to plaintiff does not change rule.**

In an action by a real estate broker to recover commissions on the theory that he had procured a person ready, willing and able to lease property from defendant, a verdict in favor of the plaintiff is against the weight of the evidence, since the testimony on behalf of the plaintiff shows merely that the proposed lessee went to the defendant's place of business once, but did not see any one there with authority to act.

It was error for the court to admit in evidence an unsworn written statement by the proposed lessee who was plaintiff's witness, which contradicted the testimony given by that witness, and the fact that the witness was admittedly hostile to the plaintiff does not change the rule.

Appeal by the defendant, West 129th Street Building Corporation, from a judgment of the Supreme Court in favor of the

plaintiff, entered in the office of the clerk of the county of New York on the 6th day of February, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*Morris Berkowitz* [*Louis Kunen* of counsel], for the appellant.

*Godfrey & Marx* [*Aaron H. Marx* of counsel; *Walter E. Godfrey* with him on the brief], for the respondent.

FINCH, J.:

This action was brought to recover brokerage commissions alleged to have been earned in procuring a party who was ready, willing and able to lease a garage owned by the defendant corporation. No lease was in fact ever executed. The judgment and order appealed from must be reversed and a new trial granted, upon the grounds, *first*, that the verdict is against the weight of the evidence; *second*, that it was reversible error to receive in evidence over the defendant's objection an unsworn written statement made by a witness called by the plaintiff. In this connection the record shows that the plaintiff first read in evidence a deposition of one Fink, who was an employee of the plaintiff and who claimed to have procured the proposed lessee on behalf of the plaintiff, but was alleged to be too ill to attend the trial. The plaintiff next called Louis Leshinsky, the proposed lessee, as its witness. The latter testified that he called only once with Fink at the defendant's garage, and was informed by the defendant's secretary, Schlesinger, " that his main partner is not in, and he don't know nothing." The proposed lessee further testified that he merely looked around and did not have any further conversation with anybody connected with the defendant and did not overhear any conversation between Fink and any of the defendants. The witness was plainly hostile, and was not even asked by the plaintiff whether he was ready, able and willing to take a lease. The plaintiff then sought to bolster up its case by introducing in evidence a written statement signed by the witness, which reads as follows:

" I, Louis Leshinsky, residing at No. 2645 Eighth Avenue, New York City, am doing business at the same address.

" Mr. Julius Fink is the first man who spoke to me about leasing the garage at 129th Street between Amsterdam and Convent Avenues, known as the New Amsterdam Garage, and he acted as the broker in the negotiations and introduced me to the owners of the premises.

" After Mr. Fink had talked to me and the owners of the New

Amsterdam Garage, and after I had called there several times, finally on June 28th, 1921, I called at the New Amsterdam Garage with Mr. Fink and saw Mr. Gilman and Mr. Brandt, and they made the final offer to me to lease the garage to me for the term of ten years, the first five years at $25,000 and the second five years at $26,000, also to pay $3,000 for the good will of the garage, and to deposit $6,000 as security on signing the lease.

" I accepted these terms and the lease was agreed upon and accepted by both sides, and I was prepared to leave the place and was working on my car to go away. About an hour after the terms were agreed upon, and I was finished working on my car, Mr. Gilman came out and said that they had changed their mind and were going to lease it to somebody else.

" Mr. Julius Fink is the only broker that I knew in connection with this transaction.

" Dated N. Y., July 1st, 1921.

"(Signed)   L. LESHINSKY."

The witness testified he could read the statement, but that it did not refresh his recollection. The court thereupon admitted the statement in evidence, saying to the jury that it was admitted " not as proof of what it says, but as proof of what this man said was said at that time, about which he now testifies he does not remember." In so admitting said statement the learned trial court was in error, since its only effect was flatly to contradict the plaintiff's own witness and to destroy entirely the well-established prohibition against introducing as evidence a statement contradicting one's own witness. To sanction this would permit a party to an action to call a witness not for the purpose of proof by the testimony of the witness, but for the purpose of placing in evidence an unsworn written statement by the witness directly contrary to the testimony of the witness. This is contrary to the rule long established in this State. Even where a party is surprised upon a trial by the unexpected hostility of a witness called by such party or the testimony of such witness is different from that expected, previous contradictory statements by such witness may not be introduced in evidence by the party calling the witness.

As was said by Scott, J., in *Berkowsky* v. *N. Y. City R. Co.* (127 App. Div. 544, 546): " There is no doubt that where a party is surprised at finding that a witness believed to be favorable is·in fact adverse, it is permissible to cross-examine the witness and to put leading questions to him, and the extent to which this may be done is, generally speaking, within the discretion of the presiding judge. But there are limitations to the application of this rule, and one of them is that a party may not impeach his own

witness by showing that he has previously made contradictory statements out of court.  *  *  *

" In the present case the only and the obvious purpose of calling attention to the contents of the memorandum was to impeach and discredit the witness.  *  *  *  He insisted that his memory needed no refreshing, and even if it had it would not have been proper to read to the jury the contents of the memorandum, and most of all it was error to permit the memorandum to be read in evidence."

To the same effect, see *Power* v. *Brooklyn Heights R. R. Co.* (157 App. Div. 400, 402); *Bullard* v. *Pearsall* (53 N. Y. 230); *Fall Brook Coal Co.* v. *Hewson* (158 id. 150, 152).

In the case at bar there was no element of surprise to the plaintiff in the hostility of the witness, since the fact of such hostility was announced by the plaintiff before calling the witness.  There is less reason, therefore, in a case such as the case at bar for admitting in evidence such a statement than in the case above quoted.

It follows that the judgment and order appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., MERRELL, MARTIN and BURR, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.