ABRAHAM H. GOODWIN, Respondent, *v.* AMTORG TRADING COR-
PORATION and Another, Appellants.

First Department, May 20, 1932.

*Albert C. Bickford* of counsel [*Simpson, Thacher & Bartlett,*
attorneys], for the appellants.

*J. W. Friedman* of counsel [*I. Gainsburg* with him of the brief;
*I. Gainsburg,* attorney], for the respondent.

MARTIN, J. The complaint in this action contains two counts;
one for malicious prosecution and the other for false arrest. It
alleges that in March, 1927, the defendants falsely accused the
plaintiff of the felony of attempted grand larceny, first degree; that
as a result of the false charge he was arrested and imprisoned and
subsequently indicted by the grand jury of New York county;
that the indictment was thereafter dismissed upon the ground that
a crime was not established by the testimony presented to the
grand jury.

By reason of the arrest, indignity and humiliation suffered by
the plaintiff; his loss of business, reputation and credit, as well as
his expenses in obtaining counsel to defend him, damages are alleged
to have been sustained in the sum of $150,000.

The defendants, Amtorg Trading Corporation and Derutra
German-Russian Transportation & Storage Corporation, Ltd., its
forwarding or shipping agent, filed separate but similar answers
consisting of general denials.

In 1926 the plaintiff was the general manager of the Alpha
International Corporation, engaged principally in the importation
of caviar and sturgeon from Russia. Most of its purchases were
made from the defendant Amtorg Trading Corporation. As
general manager, the plaintiff was in contact and personally
acquainted with the agents and employees of both defendant
corporations.

The testimony discloses that for some time prior to March, 1927, the defendants had, due to thefts, sustained large losses of sheep casings which were being imported from Russia. About two months prior to that time, the plaintiff is alleged to have spoken to one Walton S. Hoar, a customs entry clerk employed by the defendant Derutra German-Russian Transportation & Storage Corporation, Ltd., and to have promised this employee of the defendant money if the plaintiff were kept informed of the movements of sheep casings into this country through the defendants, and if Hoar, as an employee of the defendant Derutra, would see to it that a trucking company known as the Haring Trucking Company was hired to handle the shipments. It is claimed that Hoar made known this offer to the officials of the defendants and a detective agency was retained to cause the arrest of the person or persons involved in the theft of the sheep casings.

The witness Walter S. Hoar was instructed to keep in contact with the plaintiff for the purpose of determining if plaintiff was responsible for the thefts. On March 10 or 12, 1927, Hoar notified the plaintiff that there were some casks of sheep casings at pier 86, North river, New York city, and according to arrangements made between them the two men met at the pier. A truck of the Haring Trucking Company arrived at the pier and was partly loaded with sheep casings, but was dismissed when the plaintiff said that he could do nothing with the driver of the truck. The plaintiff and Hoar met at the pier by appointment on the following day. A truck of the Haring Trucking Company, driven by a man named O'Keefe, arrived and was loaded with sheep casings belonging to the defendants. The plaintiff and the truck driver engaged in a conversation and the loaded truck left the pier. It was followed by three detectives of the police department.

The sheep casings in question were destined for the Merchants' Refrigerating Company's warehouse, located at Seventeenth street and Tenth avenue. The truck did not stop there, but passed that point and continued down to Clarkson and Washington streets, where it was met by the plaintiff and Mr. Haring, of the Haring Trucking Company. These men engaged the driver in conversation and then the truck proceeded uptown to the Merchants' Refrigerating Company's warehouse, its original destination. The following day the plaintiff told Hoar that he had been held up by the driver, O'Keefe, who wanted $500 before he would divert the truckload of sheep casings from their proper destination.

The contention of the plaintiff is that he went to pier 86, North river, at the request of Mr. Hoar to inspect a shipment of sturgeon which was supposed to be in poor condition, which fact, if true,

would enable the plaintiff to obtain a better price for sturgeon he had in storage. He met Hoar at the pier but they found that the sturgeon was not being unloaded and made an appointment for the following day. The plaintiff kept the appointment, met Hoar, and while on the pier the plaintiff saw O'Keefe, a driver of the Haring Trucking Company, and spoke to him about a shortage of three casks of caviar. The truckman said he knew nothing about the alleged shortage and the plaintiff said he then visited the Merchants' Refrigerating Company's warehouse and discovered that the three missing barrels of caviar had been misplaced on an upper floor.

The plaintiff went to his place of business regularly from March 16 to March 29, 1927, and on the last day at eleven o'clock in the morning he was arrested and accused of the attempted larceny of twenty casks of sheep casings, valued at $47,000, the property of the defendants.

As a result of his arrest and the charges preferred against him, plaintiff says he lost his position in which he had been receiving a salary of $150 per week; that he was out of employment for a year and a half, and that his efforts to obtain a position were unsuccessful because the defendant Amtorg Trading Company was the only concern importing caviar into New York city.

On the above testimony the case was presented to the jury and a verdict rendered in favor of the plaintiff on the cause of action for false imprisonment and for the defendants on the cause of action for malicious prosecution.

In view of the fact that the judgment must be reversed because of a very material error in the admission of evidence, it will be unnecessary at this time to pass upon other questions involved. During the examination of a witness for the plaintiff a statement contradicting his testimony was offered in evidence by the plaintiff's attorney and admitted by the court. The statement had been secured from the witness, Walton S. Hoar, by the attorney for the plaintiff and it, in part, contradicted the testimony given by Hoar on direct examination.

It is apparent, however, that the statement was offered and used for a two-fold purpose. In addition to impeaching the witness, Hoar, it contained statements upon which the plaintiff relied to establish his cause of action. The introduction of this statement cannot be sustained on any theory. The error was very prejudicial and the evidence most damaging to the defense.

The decisions on the subject of impeaching a witness are so numerous that no extended statement is required to demonstrate

the fact that the admission of such evidence was improper for that purpose.

In *Manson-Jacobs Co., Inc.,* v. *West 129th Street Bldg. Corp.* (214 App. Div. 414) the court said: " In so admitting said statement the learned trial court was in error, since its only effect was flatly to contradict the plaintiff's own witness and to destroy entirely the well-established prohibition against introducing as evidence a statement contradicting one's own witness."

In *Koester* v. *Rochester Candy Works* (194 N. Y. 92) the court said: " It is sought to justify the ruling of the trial court on the further ground that the defendant by examining the plaintiff as to his age made him its own witness and could not impeach him. The limitations of the rule which forbids a party to impeach his own witness (assuming the plaintiff to have been such, which we do not decide) are well settled. He may not thereafter introduce witnesses to prove that his general reputation is bad and that he is unworthy of credit, nor can he prove statements made out of court in contradiction of his testimony on the stand, and he cannot contradict him as to collateral facts."

In *Hanrahan* v. *New York Edison Co.* (238 N. Y. 194) the Court of Appeals said: " But ' it is fair to judge a party by his own witness. If a party puts upon the stand a witness who is for any reason assailable, that party asserts or admits the credibility of that witness.' (FOLGER, J., in *Pollock* v. *Pollock*, 71 N. Y. 137, 152.) Plaintiff called Gleason as his witness. He was thereby precluded from impeaching his credit by general evidence of bad character although defendant afterwards called him as its witness on another branch of the case. The party who first calls a witness cannot be allowed to say or show that he was unworthy of credit by impeaching his general credibility when he is afterwards called by the other side. This is an ancient rule in New York. (*Jackson* v. *Varick*, 7 Cow. 238, 242; affd., 2 Wend. 166, 205.) * * * "

The harmful effect of the evidence erroneously admitted and its bearing on the issues is so apparent that the judgment for that reason alone must be reversed and a new trial ordered, with costs to the appellants to abide the event.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellants to abide the event.