JOSHUA ATKINS et al., Appellants, *v.* JAMES W. ELWELL, et al., Respondents.

An objection to the admission of a copy, on the ground that it was " incompetent and immaterial," does not raise the question that the paper was improperly admitted, because a copy, and not the original.

The protest of the master of a vessel, made in a port of distress, where the owners have presented to the insurers and used such protest on a claim for insurance, is admissible evidence in behalf of the defendants, in an action brought by such owners, employers of the master, for fraudulent representations as to her condition, alleged to have been made by the defendants upon her sale to the plaintiffs. What constitutes fraud in making a false representation upon a sale, discussed by FOLGER, J.

(Argued May 22d; decided June 6th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court, in the first judicial district, affirming a judgment rendered at the circuit, in favor of defendants.

This action was brought to recover damages alleged to have been sustained by the plaintiffs by the fraud of the defendants, on the sale of a ship to them. The complaint averred, that the plaintiffs were induced to make such purchase by the false and fraudulent representations of the defendants that the vessel was sound and in good order; whereas, at the time, the ship was unsound and badly worm-eaten, as the defendants then well knew. The answer fully denied these averments. On, and prior to the 14th of March, 1863, the ship was owned by the defendants. Elwell was the only owner whom the plaintiffs saw before the sale. On the 14th of March, one Kelly, who acted as broker between the parties, signed, on their behalf, a contract of sale of the ship. Afterwards, bills of sale thereof were executed. The ship was built in 1855; in March, 1862, she was repaired, opened, and surveyed, and certificates of her soundness given by the American and French Lloyds. In December, 1862, she was chartered to the government; on her return, at the expiration of the charter, she was taken possession of by plaintiffs, in March, 1863. She was sent by them to San Francisco, but encountering bad weather, put in to Rio Janeiro in distress, where a protest was made by the master before the consul. Thirty-three months after the purchase, the ship was tendered back, on the ground that at the time of the sale she was worm-eaten and unsound, and not as warranted. The defendant, Elwell, expressly denied making any representa-

tions as to her soundness. One of the plaintiffs, on the stand, swore that the protest made by the master of the ship at Rio, and which had been used by the plaintiffs in obtaining insurance money from the insurers, had been lost; that the copy produced was a correct one. The defendants thereupon offered the copy in evidence, as showing statements of the master as to the soundness and condition of the ship. The evidence was excepted to by the plaintiffs, on the ground that it " was immaterial and incompetent." The other facts sufficiently appear in the opinion.

*B. F. Tracy*, for the appellants. A fraud may consist in representing a fact as within the knowledge of the party making the representation when no such fact exists. (Story on Contract, § 506; Story on Eq. Juris., §§ 192, 193; *Craig* v. *Ward*, 36 Barb., 377; affd., 3 Keyes, 387; *Sharp* v. *The Mayor*, 40 Barb., 258; *Bennett* v. *Judson*, 21 N. Y., 238; *Griswold* v. *Haven*, 25 N. Y., 595; *Ellwell* v. *Chamberlain*, 31 N. Y., 611; *Stone* v. *Denny*, 4 Metc., 151, 161; *Cabot* v. *Christie*, 42 Vt., 121; 1 Amer. Rep., 313; *Taylor* v. *Ashton*, 11 Mes. & W., 418; *Hammatt* v. *Emerson*, 27 Maine, 308, 326; *Hazard* v. *Irwin*, 18 Pick., 95; *Leather* v. *Simpson*, 24 Law Times, N. S., 288.) Concealed knowledge of a defect is fraud. (*Nickley* v. *Thomas*, 22 Barb., 654, citing 18 Johns., 403; 1 East, 318; 6 Cow., 346; 7 Wend., 20; *Beach* v. *Sheldon*, 14 Barb., 72; *Brown* v. *Montgomery*, 20 N. Y., 287; Code, § 169; *Craig* v. *Ward*, 36 Barb., 377; 3 Keyes, 387; *Bennett* v. *Judson*, 21 N. Y., 238; *Lounsberry* v. *Purdy*, 18 N. Y., 515; *Coleman* v. *Playstead*, 46 Barb., 29.) A concealment is a misrepresentation. (*Conyers* v. *Ennis*, 6 Cow., 116, note; S. C., 2 Mason, 236.) The defendants are responsible for the representations of the broker. (Parson's Merc. Law, 152, and cases cited; *Bennett* v. *Judson*, 21 N. Y., 238; *Ellwell* v. *Chamberlain*, 31 N. Y., 619; *The Monte Allegre*, 9 Wheat., 644; *Andrews* v. *Kneeland*, 6 Cow., 359; *Nelson* v. *Corning*, 6 Hill, 336, 338; *Fern* v. *Huet*, 4 Tenn. R., 177; *Ferguson* v. *Hamilton*, 35 Barb., 427,

441 ; Story on Agency, § 134 ; *N. R. Bk.* v. *Aymar*, 3 Hill, 262 ; *Sanford* v. *Hardy*, 23 Wend., 260 ; *Jeffrey* v. *Bigelow*, 13 Wend., 518 ; *Bk. of N. S.* v. *Davies*, 2 Hill, 451.)

*E. W. Stoughton*, for the respondents.

FOLGER, J. This appeal is based upon certain exceptions to the rulings of the court below upon the admission of evidence, to its refusal to charge the jury in some particulars as requested, and to portions of the charge as delivered.

The first exception is to the admission in evidence of the protest made by the master of the ship at Rio, and which was used by the plaintiffs in the establishment and collection of their claim against the insurance companies for the damage suffered by her. One of the plaintiffs, being upon the stand as a witness, testified, that though he had made search and inquiry for the original protest, he could not find it, and that the paper which he produced was a correct copy of it. The copy was then offered in evidence. The first objection made by the plaintiffs was " to the reading of the protest, as incompetent and immaterial." It is now sought to sustain this objection on the ground that the paper read was a copy and not the original. Such does not appear to have been the explicit objection at the circuit. We think that idea was not conveyed to the mind of the court; for, although in strictness the epithet of incompetent applied to a witness indicates some legal defect in him, rather than in the matter which he is called to utter, and so to a paper, it may indicate that of itself it was objectionable, in its form or mode of authentication, rather than for what it contained, yet the common and different use of the phrase has worn off the sharpness of this meaning. And to make the alleged defect in the paper itself available on review, the attention of the court and of the opponents should have been drawn with more exactness to the specific ground of objection now taken. Had this point, that this was but a copy, been plainly presented, it might have been, if indeed it was not, avoided, by preliminary proof

of loss or destruction of the original. By the objection that
the reading of the protest was incompetent, was doubtless
understood, that though, as a general rule, the declarations
of a party made out of court may be proven against him,
still a "protest" was not such a declaration as came
within that rule. But it was a proper mode of showing
a declaration of the plaintiffs. It was a solemn instrument,
made by their agent, for their benefit, in the course of his
duty. It was used by them in a matter of importance to
them and to others. It was used by them upon a question
which was at issue in the action then upon trial, to wit, the
condition of a vessel at a time at which they in this action
allege that she was unsound. How much weight should be
given to it, is not the point here. Whatever weight it had,
the defendants were entitled to, as its statements, adopted by
the plaintiffs and used by them for their benefit in one
instance, could not be repudiated by them in another. So it
spoke of matters material to the pending issue, and it fur-
nished a proper mode of establishing those matters against the
plaintiffs. (1 Phil. on Ev., 449, chap. 8, § 10, and cases there
cited, especially *Brickell* v. *Hulse*, 7 Ad. & Ellis, 454.) And
the case last named is a sufficient authority against the second
objection of the plaintiffs to it, that the mate of the vessel
who had also signed the protest was alive ; for in *Brickell* v.
*Hulse*, the person who had made the affidavit which was put
in evidence was not only alive, but was present in court. The
plaintiffs cite to us certain cases. (2 Hill, 538 ; 9 Mass., 216;
1 Moore and Robinson, 523, and Hardres's Rep., 472.) The
distinction between them and the authorities relied on in
Phillips on Evidence, is that in the last the party, against
whom the affidavit or other document was sought to be used,
had adopted its statements and made them his own, had used
it for his advantage after he had seen it and known what it
declared, while in the first they were statements of others not
reasserted and adopted as true, or those of a witness called to
the stand indeed by the party, but without his control or
knowledge of what the witness would alter in testimony, or

were depositions taken out of court, subject to the same uncertainty of what the witness would say, and not used by the party for his benefit after what had been said was known to him.

The evidence admitted from the witness Kelly, as to the sources of the statement made by him, was not irrelevant. It was not received to show that the statement was not false, but to show that, even if false, being obtained from sources which might well be deemed authentic, the broker might well have used it without fraudulent intent, and also to show that, being derived from other sources than the defendants themselves, though conceding it was false, no fraudulent intent in its use by the broker was necessarily to be imputed to them. In this view it was proper. The witness Proal was called by the defendants to testify as to an examination of the vessel made by him, and produced a memorandum book kept by him, and after saying that he had no memory and could not speak of the matter apart from the book, he was asked whether he had " any impression from recollection on that subject?" To this the plaintiffs objected without then stating any ground of objection. The ground now taken is, that having once said that he had no memory, it was error to call for and allow him to state an impression from recollection. To sustain this objection, would be to hold that a party was precluded by the first answer given by his witness, and that he could not, by bringing circumstances to his mind, refresh his recollection so that he could afterward make a variant statement. Diverse statements, made by a witness in the same examination, are matter of comment to a jury as to the reliability of a witness, but there is not error in allowing a question put by the party calling him, predicated upon a supposition that he may answer differently from what he has heretofore testified to the questions of the same party, on the same trial.

The plaintiffs requested the court to charge the jury " that if the defendants, or any of them, knew that this ship was wormed, and that fact was concealed from the plaintiffs, and

it proves that she was wormed, the defendants committed a fraud for which they are liable."

It is sufficient to say of this request, that a question of fraudulent concealment was not in the case. The complaint was upon affirmative false representations fraudulently made. The trial was upon that issue, and though evidence may have been given which would bear upon a question of concealment without representations, we think that the court could properly refuse to give the case to the jury upon the issue presented by the request to charge. Upon a request of the plaintiffs to charge, and upon exceptions to portions of the charge, a point is made that there was substantially taken from the consideration of the jury any representations made to the plaintiffs by the broker of the defendants. Giving to this point all the force and scope which can be asked for it, it does not appear that there was any error. The broker and the plaintiffs had met, and he had made his representations before the meeting of the plaintiffs and defendants. But if it be conceded that the broker made statements which were intentionally false and fraudulent, there is lacking another element to make them available to the plaintiffs, and a fitting subject for the consideration of the jury. It must be found, to sustain a verdict, that the plaintiffs, in making the purchase of the ship, relied upon them.

But that reliance they expressly negative in their testimony. One of the plaintiffs testifies that he told Elwell, one of the defendants, that they bought her entirely on his representations. We must assume that he said to the defendant what was the truth, and that they did rely entirely upon his representation. The other plaintiff testified, that they said to Elwell, " we are relying on your honor with regard to this ship; in a great measure; if you say she is right in every way, and thoroughly sound, we will take the ship at $42,500; and we took her." Thus from their own mouth, it appears that they did not rely upon the broker's statements. It would have been nugatory, to have given to the jury the considera-

tion of matter which lacked this very important essential of making out a case for the plaintiffs.

The plaintiffs requested the court to charge, "that if the jury believed that it was represented by these defendants, that the ship had been opened, examined, and found sound, in January, 1863, and the plaintiffs relied upon it, and were deceived by it, and that if they further believe that the representations were false, the defendants were liable." The court refused so to charge, further than it had already charged.

There was no error in the refusal. It will be observed that the request did not state a proposition which, if granted and adopted, would warrant the jury in finding for the plaintiffs. It called upon the court to leave it to the jury to find the making of the representations, that the plaintiffs relied upon and were deceived by them, and that they were false, and from these findings to find liability. But in these findings there would not be culpability established against the defendants. If the jury should not also find that the representations were fraudulent, that is, that the defendants knew when they made them that they were false, or that they assumed and expressly professed knowledge that they were true, there would still be lacking one fact in the series necessary to charge them. It is true, that the jury might, if they should have found the facts indicated in the request, have inferred from them, and so have found, guilty and fraudulent knowledge. But it was in the province of the jury so to find, while the request assumed it as an inference the court, as a matter of law, would make. The court had already charged the jury, that if representations of soundness were made, which the defendants *knew were false, or knew, or had been informed of facts or circumstances which would have led a man of common sense and prudence to believe or think that the ship was or might be wormed, etc. The request should have embodied this element of knowledge of the falsity of the representations, or information of facts and circumstances which would put upon inquiry. (Hammatt* v. *Emer-*

*son*, 27 Maine, 308; *Marsh* v. *Falker*, 40 N. Y., 562, and note.)

The plaintiffs requested the court to charge "that if the defendants or any of them, *or their agent*, made representations that the vessel was sound, *in such manner as to import knowledge* in him or them of the fact that she was sound, and made them with the intent that the plaintiff should rely on them, and the plaintiffs did rely on them, and they turn out to be false, the plaintiffs are entitled to recover." But for one phrase in this request it might have been sustained. That phrase is, "or their agent." We have already shown, that a verdict for the plaintiffs, based upon the representations of Kelly, the broker, would not have been well founded; for the reason that the plaintiffs did not rely upon them in making the purchase. But the court, if it had acceded to the request of the plaintiffs, would have instructed the jury that they might have found a verdict upon those representations, if they were made in a manner to import knowledge. The court was not bound to do this, nor was it compelled to separate the proper parts of the request from those not proper. Hence there was no error in the refusal to charge as requested in this proposition as a whole.

We have not been able to find that in the points suggested in the argument and brief of the appellant, there was any error on the trial, or in the charge to the jury, or in the refusals to charge.

The judgment of the court below must therefore be affirmed, with costs to the respondents.

Judgment affirmed.