By the Court.—Sedgwick, J.
The motion by defendant’s counsel, to dismiss the complaint, was properly denied. Each of the grounds on which it was made involved a question of fact, and as to each enour evidence had been given to take the case to the j The position was not taken that there was an en. variance between the representations testified to am those alleged in the complaint. Therefore, such a position will not be now examined.
The defendant excepted to the admission by the court of testimony that the portion of the road mortgaged to secure the payment of the bonds in question had been sold in proceedings to foreclose the mortgage, and had sold for nine thousand dollárs. The reason given for the objection to the evidence was that the last transaction between the parties, in- reference to the bonds, was in March, 1868, and the testimony given related to a time, in 1869, which was too remote to make the price brought at the sale any evidence of value. The value of real estate is more permanent, perhaps, than- that of any other kind, certainly than most other kinds of property. The testimony gave a fact that was relevant to the material issue of the value of the bonds in 1868. There was no objection that this testimony proved by parol foreclosure proceedings, which could only be proved by a record or other written documents.
The declaration by the defendant, before the bonds were delivered by him to the plaintiff, that a coupon -which the latter noticed to be cut. from one of the bonds had been paid, was properly received in evidence.
*549 The plaintiff was examined as a witness on his own behalf. On his own examination he said that, after this action was begun, he went to the office of the defendant’s attorney. His own attorney was expected to be there, but had failed to go. He there met defendant and his attorney, with whom he had a conversation respecting this litigation. Defendant’s counsel put questions to the plaintiff on his cross-examination as to whether he did not, in that conversation, state that he could not and would not swear to any false or fraudulent representation made by Mr. Keech to him in respect of the bonds; and further as to whether when, in that conversation, his attention was called to the statement in the complaint, that the “bonds were worthless, or nearly so, as the defendant well knew,” and' that he gave them with intent to defraud, he, the plaintiff, did not state that he could not and would, not swear to any such fact.
The plaintiff objecting to these questions, the court ruled that the plaintiff was the witness for the defendant on this point, and that the defendant must put a general question—that he might caH for what was said.
The rule in this State (1 Greenl. on Ev. § 445 ; Jackson v. Varick, 7 Cow. 242; Varick v. Johnson, 2 Wend. 201; Fulton Bank v. Stafford, 2 Id. 483; Bogert v. Bogert, 2 Edw. Ch. 403) is that when a witness is placed upon the stand and examined, even as to formal matters, that he is thereby made a witness for all purposes, and may be cross-examined in the whole case. The cases just cited declare this to be the rule where one party called as a witness a person who, by reason of interest, could not be called by the opposite side; yet it was held that this opposite side could go into the whole case on cross-examination, and not be confined to matters of direct examination. A fortiori must be the rule applied to cases when a party calls himself as a witness. *550 Therefore, the plaintiff did not become, as to the subjects of the question, the witness of'the defendant.
Still, if the questions of the defendant were improper, the ruling upon them must be sustained, even if the court here do not agree with the court below as to the reason of excluding them on account of this form. The court below said, in effect, that questions might be put on the same subjects if they were general in form, that is, not leading.
Gbeexleab, in section 435, states it to be the law that leading questions are to be permitted even on a direct examination, namely, where the witness appears to be hostile to the'party producing him, or in the interest of the other side. When the witness stands in a situation which of necessity makes him adverse to the party calling him, as for example, on the trial of an issue out of chancery, with power to the plaintiff to examine the defendant himself as a witness, he may be cross-examined as a matter of right. It may be that these are general rules which are not to be uniformly and rigidly applied in all cases and under all conditions. It may be that a judge may limit action, under these rules, to their use and not their abuse. But they are general rules, and should not- be suspended unless there are exceptional circumstances in the case which call for their suspension. There is another general rule, that it is within the discretion of the court to allow or forbid leading questions. In this case, in proceeding under these general rules, the defendant’s right to ask a leading question should have been recognized, and he should have been allowed to put it, unless there then appeared something in' the case which called for the exercise of discretion, in depriving him of that right, beyond those bare circumstances which gave him that general right. Perhaps it would be best that such special facts should be stated in the objection to, or the ruling on, the objection to such a question. This is not here in *551 sisted upon; something should present itself in the case which calls for the exercise of discretion, and which indicates that the ruling was made in the exercise of that discretion (Russell v. Conn, 20 N. Y. 81; Lanergan v. People, 39 N. Y. 39). The ground of the ruling here appears to have been that on those points the plaintiff was the defendant’s witness. This was incorrect, as has been just shown. Nothing appears in the case which called upon the court to apply any other than the general rule, that on a cross-examination leading questions may be put.
After all, it must be determined that the evidence sought, if given, would have been material. If immaterial, the defendant has not been deprived of any substantial right.
Here it must be stated that the questions were proper under ordinary cross-examination, if they were material, in respect of the witness’s credibility and recollection. He had sustained his action by swearing that the defendant had made certain oral representations to him, and these he maintained in the complaint, and by bringing his action to trial, were false and fraudulent. It was a proper position for the defendant to take that it was possible for the witness to give color to these words, or infuse into them a significance not intended by the defendant, by transposing the sentences or changing a word, or even by giving unduly, perhaps unconsciously, emphasis to a certain word or phrase. These are important matters at any time, but especially in this class of actions (Marsh v. Falker, 40 N. Y. 536). Everything was material then that was relevant to the condition of his mind when he testified, and at other times, since the original transaction.
In this regard, as well as in regard to any hostility the witness might have against the defendant, it was right to search out everything in the way of motive, using that word in a broad sense, that would affect his *552 mind and its emanations on the trial. He had brought and maintained his action for fraud, as plaintiff he had constructed in a certain sense the case. First he testified to the representations. Then he put on the stand his own witnesses and called from them such testimony as he thought it expedient to draw out. He, by the nature of his action, took the position that he had been deceived by the representations, and in. his reexamination testified that he took the bonds on the faith of the representations made by the defendant. If, as a fact, he had said that the defendant, 'had not made any false and fraudulent representations to him, the defendant might have asked the jury to say, if there had not been some conversation by the plaintiff when he pretended that it was a case of fraud and yet himself did not believe it. It might be that the pretenses were not so falsely or fraudulently made as to have deceived the plaintiff, and that, in fact, he was hot deceived. It might be that he had fitted his testimony in regard to what the defendant said to the other evidence he could produce as to the value of the bonds. If the questions had been answered favorably to the defendant, the ground of the belief might have been called for, and some fact of importance disclosed.
On the other hand, under the explanations of the witness, or, indeed, without them, a jury might attach an importance to the testimony. Still it should be submitted to them. In cases of this kind the jury should have all means that the rules of evidence can give them, deciding cautiously and with full knowledge of all the facts.
As a general rule, the opinion or belief of a witness is not evidence, and therefore a former statement of his as to them, cannot be called for. In this case the questions referred to statements of belief or opinion, but not purely so. There were elements of fact included. Whether any representations were made, what *553 influence originally they had, if made as the plaintiff considered in reference to their being false and fraudulent, also whether such as were actually made were not false or fraudulent, because the witness by investigation had found them to be true, were all matters of fact. The questions that related to these matters of fact were not made incompetent in this case as partly calling for mere opinion and belief, on two grounds. First. When a party claims a legal right, and has put himself on the stand as a witness, his credibility is affected by an unexplained statement of his that he believes that he has no such right, and the fact of the statement is so unusual and so against his interest, that it is, as cross-examination, a proper mode of approaching to his knowledge of material facts, which may be the foundation of such belief (Opinion of Judge Monell, in Green v. Rice, 33 N. Y. Sup. Ct. 1 Jones and Spencer, 293). Second. When part of the case or defense consists of the state of mind of a party, it is proper to ask of him on the witness stand Ms declaration as to Ms state of mind, at a subsequent time, in reference to subjects alleged by Mm to have induced that state of mind which is essential to his cause of action or defense.
On this point the conclusion is, that the defendant should have been allowed to ask the question under examination. Marsh v. Falker, 40 N. Y. 565 ; Chester v. Comstock, Id. 575, have given a clear rule to be applied to cases of this kind. Judge Daniels said, in Marsh v. Falker, “ that the representations made by the defendant to the plaintiff in that case were sufficient to warrant a recovery if they were fraudulently made.” But “before the plaintiff could lawfully recover that loss from the defendant, it was equally as essential to the right to do so, that he should satisfactorily prove that these representations were fraudulently made. That they were not only false in fact and caused the loss sustained by him, but beyond this that *554 they were made with intent to deceive him. This was the gist of the action, and it has always constituted its distinguishing element, and as such it has been described by all the authorities,” citing many cases, and Chester v. Comstock.
In Chester v. Comstock, Judge Woobbttff said, “ actionable ” fraud, consisting in a false representation imports, ex m ternimi, an intent to deceive. It may be committed by stating what is known to be false. It may be committed by professing knowledge of the truth of a statement which is untrue. But in either case falsehood uttered with intent to deceive are the essential “ ingredients.” But a representation made without intent to deceive, in the belief .that it is true, whether it be a representation imputing the existence of the fact or imputing the knowledge of the fact, is not per se a fraud for which an action will lie. Whatever the representations may be, it is in such actions a question and vital question whether it. was fraudulently made ; that it was made imprudently or indiscreetly, is not enough. Deceit is the gist of the action. Falsehood, the intent to deceive, and damage, must concur.
Nothing can be less doubtful than these propositions. The test is, did the defendant mean to mislead 1 If he did, then he had an intent to deceive ; and whatever- were the forms of the words he used, whatever the meaning of the words, considered apart from his object in using them, if he did not have as an object the misleading of the plaintiff, he is not liable to an action. "The legal, though, perhaps, not the usual reason for this is, that previous to his saying the thing complained of, he owed no legal duty to the plaintiff; a plaintiff has no claim upon a defendant that he, upon request, shall exert his powers of recollection or judgment in behalf of the plaintiff. If he proceeds to do or say anything in acting upon the plaintiff ’ s request, the measure of his duty is, not to commit a tort, i. e., ‘ not to intentionally deceive the plaintiff to his damage.
*555 Judge Daniels, in reconciling Bennett v. Judson (21 N. Y. 238), with Marsh v. Falter, or rather in showing that it did not establish a different principle, notices that in that case the representations were made in such a manner and under such terms ££ as were calculated to produce the conviction in the mind of the purchaser, that he had personal knowledge of the truth. That instead of being the result of information derived by him, he had actual knowledge acquired by ocular inspection and personal examination, and therefore, that ah intent to deceive could be very naturally inferred.” The learned judge means inferred by a jury and not as a matter of law. Judge Woodbuee thought that Bennett»; Judson was not in harmony with' the rule he stated in Chester v. Comstock, which was followed in Marsh v. Falker, and cases afterwards decided. Judge Daniels did not mean to unsay what he had just stated and which of itself decided the case. He had said that representations must be made with intent 'to deceive.' He proceeds, “The difficulty in the case was as to the existence of the fact, arising out of the common habit of mankind to express themselves in positive unqualified terms when the statements are dependent upon their faith in the veracity of others. Where convictions thus derived may be inadvertently expressed in positive terms without any intent to deceive, they would be insufficient to sustain an action of this nature, because the design to defraud would be excluded from the transaction. That is, men often say affirmatively and honestly that things exist, which may be their conclusion in reasoning, or may have been learned from others who themselves have made no original observation, or may have been read in a newspaper.” Certainly, very little is said in the common in't^rcourse of life, even when subjects of importance are spoken of with gravity and sincerity, which is based upon that kind of knowledge required in a witness to *556 testify. In Marsh v. Falker the representatons consisted, of unqualified, positive statements, among them that Kahn was good for seventeen thousand dollars or eighteen thousand dollars in property, “a thing which Falker might know by what is called direct knowledge.” Such a statement was calculated to produce the conviction, that Falker had actual knowledge on the subject, so far as the meaning of the words goes, and the presumption is that a person understands the meaning of words he uses. Falker assumed to have knowledge of their truth, and of course he at the time knew he had no such knowledge.
It must, therefore, be always held in view that no matter what the statements were calculated to produce as cause and effect, no matter what a person, so far as the form of what he said is answered, assumed to know, if he did not actually calculate to produce that effect, or if he did not assume, by a form of words, knowledge for the conscious purpose of leading the plaintiff to believe he had knowledge, he is not liable. If he meant to deceive and defraud in any way, by stating what turns out not to be fact, he is liable. Of course, his previous knowledge or means of knowledge, the forms of the words he uses, and the presumption of fact made by the law, are all to be considered by the jury, but the conclusion of the whole matter must be a purpose or intention to mislead, deceive, injure, or defraud.
It should be noticed that in Oberlander v. Spies (45 N. Y. 177), in which case the referee had omitted to find that the defendant knew that the representations made by him were false or made with fraudulent intent, the opinion of the court said that if the defendant believed, or had reason to believe, that the representations were false at the time, then they were for that reason fraudulently made. This does not say that if the defendant had had at a time previous to the representations reason to believe that the facts stated by them did *557 not at that previous time exist, then that the repre- ' ^audulent.
"t the time of the representations, .on to believe that they were then u’audulent. The reason of belief vne representations as they were made, .a not dormant, as entertained at a past time, ot be present to the mind of the defendant, and ygnized by him, at the time he says what was at /ariance with it.
Atkins v. Elwell (45 N. Y. 760) sanctioned the charge of the court below in that case, that if representations were made which the defendant knew were false, or knew or had been informed of facts or circumstances which would have led a man of common sense and prudence to think and believe that the ship was or might be wormed, the defendant, &c.
The court of appeals then says, that a request which had not been acceded to by the court below should have embodied this element of knowledge of the falsity of the representations or information of facts and circumstances which would put upon inquiry. This would seem to imply that if, at a former time, facts had come to the knowledge of the defendant which would have led a man of common sense to proceed to inquire and'then to reason upon and weigh the facts he knows, or the results of the inquiry, he will be liable upon making the representations, if the representations turn out to be false. No doubt testimony on these points is material and relevant to the question of fraud, but it looks as if the court meant to say that it was of itself proof of fraud in making the representations. Applying this without qualification seems to lead to results at odds with the essential traits of actions for deceit. If it is clear that the defendant owes no duty to the plaintiff to make the representations, then, when the previous facts occurred which would put a man of common *558 prudence on inquiry, and which, with the results of the inquiry, would lead such a man to the true state of the case, the defendant was not bound .to inquire nor to exercise his judgment, i. e., he was not bound to get into possession of the facts which, by the opinion, showed that he intentionally deceived when he made representations contrary to the result he would have . reached if he had inquired, &c. Does he, at the time of making the representation, become bound to the plaintiff to exert his memory and judgment ? If he does not exert these, is he liable for his omission or neglect \ It is hard to understand why, in an action not for breach of contract or for negligence, the defendant should be held to have been bound to the plaintiff, at the time of the representations, to recall the facts and circumstances which would have led to inquiry, and to give his attention and best judgment in drawing conclusions from them, before he speaks. The case seems to suggest that the mere existence of facts which would have led to inquiry, though they themselves were not sufficient to falsify the representations, will be proof of fraud.
In the present case, the counsel for the plaintiff made no point of the kind last referred to, so it must be decided upon Chester v. Comstock, as approved by Marsh -y. Falker, Oberlander v. Spies, and Atkins x>. Elwell.
It results from these considerations that the court should have charged, as requested by the defendant’s counsel, “that if the jury believe that the statements made by the defendants were made in the honest belief of said statements, and although said belief has resulted from a mistake he has fallen into without fault on his part, the plaintiff cannot recover ” unless the court otherwise made the same charge in substance.
The learned counsel for the plaintiff argues that the court could not have charged this, because if this de *559 fendant assumed to speak from knowledge when he had none, the fact that he believed the representations is no defense. But this does not seem to be a possibility. If the representation was that the defendant knew a certain thing, if he did not know it, it is not possible that he could believe the representation, unless you say, in a colloquial sense, that he believed he knew, and in this sense he could have no intention to deceive. More broadly, Marsh -9. Falker is in its main proposi- ' tion against this position of the counsel. It says,' in effect, that loose method of conversation prevails in which men assume to know things which they do not know, and yet do not assert with any fraudulent purpose. It is hardly necessary to assert again that the fact that a man uses a positive and unqualified form of assertion, and in that sense assumes to have knowledge of the proposition he makes, no doubt will always have great influence with a jury in examining the issues as to whether he meant to deceive, but it does not seem to have been decided by the cases that it is conclusive proof of fraud. Judges in delivering opinions have used the phrase alluded to as a practical illustration of a principle of law, but they do not make it the rule.
The counsel for plaintiff further urges that the court did, in effect, charge the equivalent of their request under examination. After considering deliberately all the charge, as it appears in the case, the conclusion has been reached that the court, in declining to make the charge, misled the jury as to its province of saying , whether or not, as a matter of fact, the defendant intended by means of what he said to defraud the plaintiff.
The learned judge began by stating that the counsel had presented some questions for him to charge which are sound in law. I do not see any conflict between the points. That is, the jury was instructed that substantially the law as stated by the plaintiff’s counsel *560 was the same as the law stated by the defendant’s counsel ; in other words, that one was the equivalent of the other.
The court went on to give the proposition of law as stated in behalf of the plaintiff. The first was that if a material misrepresentation be made, it is considered as a constructive or legal fraud, although it be made without any «willful intention to deceive, but merely carelessness, mistake or ignorance. As to this, the court said that he did-not agree positively with it, and that he would qualify it by what should be charged thereafter. The second was that if a man be actually ” deceived by a misrepresentation, the practical result is the same, whether it was a willful fraud or not. This the court charged. The third was that if a party undertake to make a material statement, not knowing whether it is true or false, and thereby mislead the other to his injury, it is no defense that he did not know that the statement was false, since, before making the affirmation, he should have ascertained the truth. Then the court went on to give the proposition of law stated on behalf of the defendant, which the judge had said did not conflict with the points made for the plaintiff. The court did not go over the defendant’s points in detail, but as to seven of them, he said that these propositions of law generally were sound. Two of them requested the court to charge that the jury must be satisfied that the defendant was guilty of intentional falsehood in making the representation, and that the plaintiff must satisfy the jury that the defendant was guilty of falsehood, and that he intended to deceive the plaintiff. It seems to result from this that the jury was led to think that this intention to defraud might be found in a constructive or legal fraud, which the jury were bound to say existed if a man were actually deceived to his damage by a material misrepresentation which misled him, although the party making did not *561 know whether it was true or false, because he .was bound, before making the affirmation, to have ascertained the truth.
But to make a party liable it is necessary that the jury find that he was guilty of an actual fraud in fact, as distinguished from a constructive or legal fraud ; nor does a party become liable if, in undertaking to make a material statement, not knowing whether it is true or false, he thereby misleads another, because before making the affirmation he should have ascertained the truth. That breach of duty, admitting for the moment that he was so bound, does not amount to fraud, which must exist to make a cause of action. It seems to me, without going into unnecessary detail, that the conception of the cause of action by the plaintiff was essentially unlike that presented by the defendant, and therefore, a refusal to charge the request in view, led the jury to think that under some conditions the defendant might be found guilty, if he had, without fault on his part (Atkins v. Elwell, supra), an honest belief that his statements were true.
The court did not afterwards so qualify the first proposition made by plaintiff’s counsel as to weaken any force it had in its specific construction. The court afterwards did say that the jury must find that the defendant meant to deceive. This was not a qualification of the proposition, but in substance negatived it. If the two were to be (from the court saying it meant only to qualify the proposition) considered together by the jury, the jury could not tell which to rely on, and the eighth request might form a turning point, and probably would, in the minds of the jury in coming to the conclusion, that at least the court did not mean that an honest belief in the statement was to be considered by them on the question of fraud.
In that part of the charge that followed the refusal to charge the eighth request, the court told the jury *562 what it was necessary that they should find before making a verdict against the defendant. The learned judge explicitly said that it was necessary to find that the defendant intended to defraud the plaintiff. No doubt the court intended to make this a vital requisite, but inadvertently did not anywhere instruct the jury as to what should be the effect with them of an honest belief held by the defendant that what he said was true. As said before, by refusing to charge as to such effect, the jury were permitted to think that even if without fault on his behalf he believed what he said to be true, they could still find that he intended to defraud. This is in opposition to the reported cases.
Another portion of the charge might have sustained this construction of the charge by the jury. The court said that if the defendant in making the statement expressed his opinion upon the bonds as to their future or present value, then the plaintiff took them at his peril. “But representations” made by a party of personal knowledge of facts is different from a mere expression of opinion; for if a party makes a representation in such a way to you that it is calculated to make an impression upon your mind that he is spea,king from his knowledge, or that he has knowledge and is speaking from that knowledge, then he must be held liable. The jury were then told that the facts then described were proof of the intent to defraud. But this leaves the proof of fraud to rest, not upon what the jury should say was sufficient evidence that the defendant meant to cheat, but upon the form of expression as calculated to produce a certain impression. Not much, if anything, beyond the fact that the defendant, though cautious and prudent, was actually deceived, would be necessary to be found to prove that the defendant did express himself in a way that was calculated to give the impression particularized by the charge./ But as has been before insisted on, if the defendant did not *563 mean to mislead the plaintiff, no special form of expression, whatever it is calculated to effect, will make him of itself guilty of an intent to defraud.
In looking through the charge, the defendant does < not appear to have had the benefit of the substance of f the eighth request, and to which he was entitled.
The judgment should be reversed, with costs to the defendant, to abide the event of the new trial that is granted.