Daniels, J.
The action was to recover damages for fraudulent representations charged to have been made by *236 the defendant to the plaintiff and thereby inducing him to become the purchaser of the ship called the Elizabeth Hamilton. It was before this court on a previous occasion when the complaint had been dismissed at the trial, and upon an examination of the case as it then appeared it was considered to be one for the disposition of the jury, and a new trial was accordingly ordered for that as well as another reason. Very much the same evidence was given on behalf of the plaintiff as had then been introduced into the case, but this evidence was controverted on the part of the defendant, and both at the close of the plaintiff’s case and at the close of all the evidence, an application was made to dismiss the complaint on the ground that the case had not been proved in such a manner as to entitle the plaintiff to have it submitted to the jury. And for the like reason, as well as upon certain exceptions taken during the trial, the motion was made to set aside the verdict which was denied by the court.
The evidence upon this trial proved the fact to be that the ship was built in the year 1841, and that she was purchased and owned by the plaintiff and his partner in or about the year 1855, when she was about eight years old, and she was afterwards owned by them until the decease of the other owner shortly before the sale was made to the plaintiff, and that the defendant had owned his interest in her for the period of eighteen years. Before the time of the sale, she had been in her lower hold whitewashed and painted freshly between decks and her rigging had been tarred with coal tar, and her iron work painted red, and the residue white, giving her the appearance of a ship in good condition, and to a great extent in that manner avoiding the exposure of defects in her which might have indicated to the purchaser what was then her actual condition. But by the use of these materials that, to all outward appearance, was obscured and concealed and for that reason it was insisted upon the trial that the plaintiff had purchased the ship relying solely and wholly upon the representations made of her condition by the defendant.
At the close of their negotiations,' a letter was written by the defendant to the plaintiff offering her for sale for the sum of $19,000, which the plaintiff by a letter to the defendant, at the same time accepted. The defendant’s letter was not presented as part of proof at the trial, the plaintiff stating that he had been unable to find and produce it, and he was allowed therefore to state its contents from his recollection, and as a part of such contents his testimony was that it stated that he would take the ship at that price if she was as the defendant represented her to be. This was denied by the defendant, whose statement was that by *237 his letter he proposed to sell the ship as she then was at Congress street in Brooklyn. It is not necessary to determine, nor was it for the jury, which of these parties may have been the most reliable in his recollection of the contents of the letter, for if it was written in the form mentioned by the defendant, still if he fraudulently misrepresented the condition of the ship to the plaintiff and in that manner induced him to purchase her, when he otherwise would not have done so, a right of action for damages would be made out. And whether he had or not, so misrepresented her condition, was a vital inquiry presented and contested before the jury during the trial.
The first of the interviews relative to the sale of the ship took place between the defendant and the witness Henry A. Curtiss, who was acting for and in behalf of plaintiff, and was so understood by the defendant. He testified that the defendant stated to him that the ship “had a large, heavy frame of white oak, and was staunch and strong and tight, and a good old ship. * * * And that she was all ready to take in a cargo, and he could send her to sea without any expense, and that she might need some running rigging to the amount of five or six hundred dollars. * * He said her sails were all good and piled up between decks.” He testified further: “I stated to him that he, the plaintiff, wanted a ship to load for San Francisco to take a cargo of white oak timber to the navy yard right away. * * * He said he had just the ship for that voyage * * * And the ship was all ready to load, tight, staunch and good, and would require but very little for such a voyage.” And this the witness stated was in substance repeated by him to the plaintiff. After that an interview on the same subject is stated to have taken place between the plaintiff and the defendant, in which the plaintiff stated that the defendant “said she was tight and staunch and a good carrier, and there was not a better ship sailed out of the port of New York; that she was built in Portsmouth; built of white oak, and her frame was very heavy, and she was in splendid condition. He had put her in condition, and he said from four to six hundred dollars at the outside would send her to any port, and he said she is the very vessel you want to go to California with; she is a large carrier * * * I have told you she is in first-class order, well found in everything, and with the exception of two or three spare sails and some running rigging is all you require to send her to sea, and four to six hundred dollars would be the outside, and she is all ready to load at once.” And it was in reliance upon these representations that the plaintiff testified he purchased the ship. The defendant denied the making of such representations, and in *238 his denial he was to a certain extent, though not wholly, sustained by two witnesses who were in his office at the time when the negotiations for the purchase of the ship took place between these parties. But their corroboration was not entirely complete, for the reason that they did not appear to have heard all the conversation which took place between the plaintiff and the defendant, their attention being employed in part by other subjects, and one of them being for a portion of .the time out of the office.
As the case was presented by this evidence, the point was very clearly one for the jury to decide whether the representations affirmed on behalf of the plaintiff had been made by the defendant, and it cannot justly be said that there was not a preponderance of proof against the defendant when the probability is considered and added to the positive evidence that a person would not ordinarily be inclined or willing to purchase a ship without understanding from the vendor something in reference to her capacity and condition. As the evidence was made to appear and obtained from the witnesses who were before and observed by the jury, it was for them to decide who was right in that given concerning these alleged representations, and they must have found that they were made, as that was alleged to be the fact, to induce the plaintiff to become the purchaser of the ship.
It was not, as it could not have been, very seriously contended that these representations were truthfully made, for the ship was immediately taken to Newburg, where she was to be laden with timber, for the purpose of receiving her cargo. This was in August, 1813. She was then overhauled and her condition was disclosed, and the witnesses who did the work, as well as. the plaintiff himself, who observed the condition of the ship and her rigging, testified that her timbers were in an unsound and decayed condition; that her planking had been worm-eaten; that all the hemp rigging was poor, and not in a condition to be used, that her chain plates were rusted nearly off, and bolts which had been used in her construction were so far rusted as to require to be removed, and supplied with new ones, and that the upper part of her main-mast was rotten about two-thirds of the way through, and was entirely worthless, and the timbers about the stern and above the transom were incapable of holding nails, and that her sails were mainly unfit for use. It was also stated by a witness who-worked upon her at Boston, in 1811, that she was then leaking, when loaded and her sides between light and loaded water lines had wormholes in them, and that the seams between her planks had been so far increased in width that it became necessary to put a sheathing of seven-eighths inch boards of the width *239 of about six feet around the ship, to prevent the oakum from washing out of the seams, but which the plaintiff testified the defendant informed him had been put on to save the copper plates on the sides of the vessel in Havre. But this, however, was denied by the defendant. It also appeared from the evidence of witnesses who had beem employed upon the ship before the time of the sale, that when she was. loaded, she was in such a leaky condition as to require the pumps to be used for a considerable part of every four hours, and sometimes oftener. • And one of the witnesses stated that by going into the hold and listening for the water he could hear it running or trickling into the ship. This evidence exhibited the condition of the ship to be such, as she also proved, to be unable to prosecute her voyage with the cargo taken on board, and very plainly to require the question to be submitted to the jury whether the representations, if they had been made at all, were truthfully made, and it was quite sufficient to support them in the conclusion that the representations relied upon were untruthful.
But this evidence did not complete the plaintiff’s case, for before he could recover against the defendant for selling this inferior ship as a sound one, the law required the further fact to be established that the defendant knew the representations to be untruthful, or at least that he did not know them to be truthful, and that they were made with intent to deceive the plaintiff, and in that manner induced him to purchase the ship when he would not have done so if the truth had been known to, or discovered by him. But positive proof has not been required to establish such knowledge and intent to deceive, if it were, then a charge of this nature could rarely be supported in a court of justice. Where fraud is contemplated, the existence of that fact is made as much the subject of concealment as is practicable or possible, and the law necessarily, therefore, permits proof of circumstances, which may logically support the inference that a fraudulent intent was an element in the transaction in controversy Beardsley v. Duntley, 69 N. Y., 577, 581.
And in this case circumstances were introduced from which it was claimed that the jury might very well deduce the conclusion that the defendant did intend to deceive the plaintiff in making the representations which had been made the foundation of the action. The circumstances consisted in the probable fact that the defendant as a principal owner in the ship familiarized himself with her history and her condition. He was present on one occasion while the repairs were being made in Boston in 1871, and upon other occasions when she was being repaired at Brook *240 lyn in 1865, and where it is stated he was passing back and forth looking at the vessel, while the men were working upon her, and that she then had worm-holes in her sides. It was also apparent that he understood that the sheathing had been put around the vessel to keep the oakum in her seams, and that she had been painted, whitewashed and tarred in such a manner as to give her the appearance of a ship in good condition. And from these principal facts, as they were disclosed by the evidence, it was for the jury to determine, notwithstanding his own denial, whether he did not know, or have good reason to believe, that the ship was not in the condition in which the alleged representations stated her to be, and if this was the condition of his mind, whether he did not make the representations which by .the verdict must have been found to have beén made, to deceive the plaintiff as to the condition of the ship which was offered to him for sale. These were important facts, and with the knowledge which the defendant might be assumed to have, of the condition of the ship, from his long ownership of a large interest in her, legally supplied the jury with the means of inferring that he did know the ship not to be in the condition represented, and that he made thb representations concerning her condition to deceive the plaintiff. And if these were the facts, as the evidence tended to prove the ship to be of but little value, they were sufficient under the law to entitle the plaintiff to a verdict in the action. Duffany v. Ferguson, 66 N. Y., 482, 484; Overlander v. Spiess, 45 id., 175.
There was consequently sufficient in the case to require its submission to the jury and to sustain the refusal to dismiss it for want of evidence, or to set aside the verdict as contrary to the evidence.
Proof was given upon the trial of what the captain of the ship said at the time when the plaintiff inspected her at Brooklyn. This was objected to, on the ground that it was after the contract for the sale had been made, and was, therefore, immaterial; but it was previously stated that the plaintiff was referred by the defendant to Captain Stone for information concerning the condition of the vessel, and it was stated to have been under that reference that the conversation was had with the captain, and mostly it related to the appearance and condition of the ship, and it had a bearing certainly upon that part of the case which depended upon the duty of the plaintiff to inspect and examine her. It was not proposed to be proved by what had been said that other fraudulent representations had been made concerning the condition of the ship, for it was not charged that the captain himself was implicated in any fraud connected with her sale or disposition, but what *241 was designed to be proved was no more than the information which the plaintiff had obtained through the reference made to Captain Stone by the defendant. And that for the reasons assigned when - the case was previously before this court, it was competent for the court at the trial to receive as part of the proof.
A very large number of exceptions were taken to the admission and exclusion of evidence during the trial. They have all been examined, but in neither of the rulings affecting such evidence, has it been considered that the court became involved in any error. They are too numerous to be separately examined and discussed at the present time, and upon neither has any particular stress been placed in the argument, or the points, requiring any special examination. As to all of them it is sufficient to say that the court was as liberal to the defendant in these decisions as it could reasonably have been expected to be.
The same observation may be made concerning most of the points raised at the time when the case was submitted to the jury. In the charge of the court its controlling attributes were very clearly explained, and the legal rules to be observed were brought to the attention of the jury.
Upon this subject they were directed that “the defendant is not liable unless he made representations which were untrue at the time, nor would he be liable even if the representations were untrue, unless the defendant knew their falsity at the time he made them, nor would he be liable conceding that he made the representations, unless they were made for the purpose of defrauding the plaintiff through a purchase of the vessel, the plaintiff relying upon their truthfulness. * * * In order to recover he must show that the representations were made by the defendant, that they were false, that they were known by the defendant to be false at the time, that they were made with the intent to deceive the plaintiff, and that the plaintiff relied upon them in making the purchase.” This was a brief but yet a comprehensive presentation of the law of the case to the jury, strictly supported by the authorities which have been referred to, as well as all others bearing upon the trial and disposition of such an action, And many of them were collated and cited in the case of Hammatt v. Emerson (27 Maine, 308). After this charge was given to the jury the defendant’s counsel submitted twenty-six different requests, which, to a very great extent, were mere repetitions of these legal principles, and of others presented by the court to the jury, and in answer to them they were mainly submitted to the jury as favorably as that could legally be done for the defendant.
*242 There were some which were denied or qualified by the court that have been made the special subject of consideration and reference in the argument of the appeal. The first of these which seems to be deserving of consideration is that relating to the sheathing which was put upon the vessel, the plaintiff testifying that the defendant stated that it had been put on in her last voyage at Havre, while as a matter of fact it was put upon the ship as a part of her repairs in Boston in 1871. The court was requested to say to the jury that this would give no right of action to the plaintiff even, although, the defendant added, that the sheathing would not need to be taken off, and that the vessel was all right under it. That the court could not justly have said to the jury, for it was made to appear that the vessel was not all right under the sheathing, and if the defendant deceitfully misrepresented her condition under the sheathing, that of itself might entitle the plaintiff to recover in the action.
The court, however, did not go as far as that in the response to this request, but what was' said was that while it might not give a cause of action to the plaintiff, it might be taken into consideration by the jury in determining whether or not the defendant made any false representations in regard to the condition of the vessel. And that was strictly correct, for if he made the representations it was averred he had made, the vessel appeared not to be all right under the sheathing, and that fact could well be considered by the jury as one of some importance, at least in the case. By the eleventh request, the court was asked to direct the jury that there was no evidence in the case tending to show that the defendant knew of the rottenness discovered in the stern of the ship, and that there could be no recovery for that defect; and the court charged that, with the modification, it was for the jury to determine under the evidence whether the defendant knew of the rottenness in the stern. If he did not know it, he is not chargeable with any deceit in respect to the condition of the stern, and that was saying as much to the jury as the defendant had reason to claim should be said under the evidence, for in the condition in which the ship was found to be, the jury, upon the facts already alluded to, might very well have inferred, as they probably did, that the defendant knew of the decayed condition of the ship, which it was reasonably probable had extended to her stern, as-well as the timbers, knees and other parts of the vessel.
By the twentieth request the court was asked to instruct the jury that if the jury believe upon the evidence that the plaintiff had a fair opportunity to examine the ship, her tackle, apparel and furniture, and did, in fact, go and ex *243 amine the same before making the agreement of sale, then he was bound to the exercise of due diligence in making that examination, and he cannot be heard to complain of anything in the condition of the ship that he ought to have known from such examination. In answer to this, certain general observations were made which were quite pertinent to this character of cases, and then it was added that the rule suggested by this request applies to such defects and omissions, if any, as were open and discernible by ordinary observation. It would not touch any defects or omissions not open to ordinary observation. If the representations complained of were made, and the jury shall believe that they were relied upon, the plaintiff was not obliged to examine and search for defects, although he did see the vessel. Nor would the rule apply if anything had been done by the defendant to conceal defects or throw the plaintiff off his guard, and that was as much as any of the authorities required should be said upon this subject, and it is fully supported by Long v. Warren (68 N.Y., 426), and Slawter’s Administrators v. Genson (13 Wall, 379). For owing to the appearance which had been given by the whitewash, paint and tar that had been placed upon her, and upon her rigging, bolts and chain-plates, the plaintiff could not very well from an inspection of the ship have discovered the defects which were afterwards found when she was overhauled to fit her for the voyage.
After the disposition of the requests presented on behalf of the defendant, the plaintiff asked the court to charge that if the defendant was informed and knew of facts, which, in the exercise of common sense and ordinary prudence, were sufficient to put him on inquiry and would have led him to a knowledge of the truth, then he may be held liable for the same as if he had actual knowledge, and the court so charged the jury, and this has been relied upon as an erroneous instruction, but it was no more than what was approved of by the court of appeals in Craig v. Ward (3 Keyes, 387). There the jury were instructed that, “If the representations made to the plaintiff were untrue, although the defendant Ward did not know that they were so, yet if he was informed, and knew of facts which, in the exercise of common sense and ordinary prudence, were sufficient to put him on inquiry, and would have led him to a knowledge of the condition of the title, he would be liable the same as if he had actual knowledge.” Id. 392. And in Atkins v. Elwell (45 N. Y., 753,) such a proposition was generally referred to as not being legally out of the way. Id. 760. And it has not been gainsaid by anything contained in the decision of Hammatt v. Emerson, (supra). But without now deciding whether on principle it should *244 be, or not, it may be added that what the court charged in this instance, having been sustained in Craig v. Ward, the question of its legal correctness is not now in this court open for discussion. For all present purposes the proposition charged is to be accepted, as it probably is, as lawfully correct. It was not imperatively applied to the control of this controversy, but the jury were at most informed that the defendant might be held liable for the omission to obtain the knowledge which he had reason to believe was accessible to him, the same as if he had actual knowledge. The instruction did not withdraw from the jury what had previously been said to them with so much care and minuteness in the charge, that it was necessary that the defendant should have made the representations which were relied upon as false, for the purpose of deceiving the plaintiff, and if he did make such representations for that object and they were false, then under the authorities the plaintiff was entitled to maintain the action. Upon no ground should the judgment or the order denying the motion for a new trial upon the minutes be interfered with, but both the judgment and the order should be affirmed.
After the close of the evidence upon the trial, and the case had been summed up on behalf of the defendant, his counsel proposed to prove and read certain receipts showing that the plaintiff had been paid for the cargo laden upon the vessel previous to the time mentioned by him in the course of his examination as a witness. This proof was rejected by the court and the trial was then required to proceed, as it did, to its conclusion. To secure an opportunity to make proof of these receipts was the object of the application for a, new trial, on the ground of newly-discovered evidence. But that, under the authorities, could not be ordered, for the proposed proof had no bearing upon any material controversy in the case. It has been urged that it would have upon the lading of the vessel, and the expedition that was necessary for sending her to sea, but those were merely collateral, or incidental circumstances which could not strictly be made the subject of affirmative evidence on behalf of the defendant. The ship, as she is stated to have been represented, was capable of carrying a cargo of 1,000 tons, and the cargo laden upon her exceeded this number only by fourteen additional tons, not enough for a vessel which it was stated had the capacity of 1,200 tons, to charge the defendant with overloading her. Besides, if it had been important to make proof of the receipts, reasonable diligence on behalf of the defendant would probably have obtained them before the close of the case, or the argument of the counsel had commenced.
It had also been urged that the jurors and the judge *245 presiding at the trial, expressed impatience with the time consumed in introducing evidence, but there is not enough of that to allow it to be characterized as improper conduct tending to the prejudice of the defendant’s rights. The evidence was given with very great detail and minuteness, more, as the case itself has presented it, than was requisite for the development of the controversy and the defense, and the jurors as well as the judge may not inappropriately have considered that too much time was being devoted to what appeared to be immaterial facts. And if they did, it could not very well be made a ground for setting aside the verdict of the jury, as long as it does not appear to have been prejudicial to the defendant, or unwarranted by anything transpiring upon the trial. This motion, as well as the other, therefore, was properly denied by the court, and the order from which this appeal has been taken, should be affirmed.
Van Brunt, P. J., and Brady, J., concur.